**MERIDIAN MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Roslyn E. KELLMAN, Defendant–Appellee,**

Skender Bajrami, individually and do-
ing business as Kopliku Painting
Company, Defendant.

No. 98–1801.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 5, 1999.

Decided Dec. 2, 1999.

Rosalind Rochkind, Daniel S. Saylor (ar-
gued and briefed), Garan, Lucow, Miller,
Seward, Cooper & Becker, Detroit, Michi-
gan, for Appellant.

Michael J. Haddad, Goodman, Eden,
Millender & Bedrosian, Richard A. Soble

(briefed), Matthew E. Krichbaum (argued and briefed), Soble & Rowe, L.L.P., Ann Arbor, Michigan, for Appellee.

Before: MARTIN, Chief Judge; DAUGHTREY, Circuit Judge; KATZ, District Judge.[*]

## OPINION

KATZ, District Judge.

Plaintiff–Appellant Meridian Mutual Insurance Company ("Meridian") appeals the trial court's grant of summary judgment in favor of Defendant Skender Bajrami, d/b/a Kopliku Painting Company ("Kopliku"), based on a determination that an insurance policy it issued to Kopliku, obliges it to defend and indemnify Kopliku in a personal injury action arising out of exposure to certain chemicals used by Kopliku in the course of its business. For the following reasons, we AFFIRM.

### BACKGROUND

At all times relevant to this suit, Kopliku was covered by a commercial general liability ("CGL") insurance policy issued by Meridian. The policy obliged Meridian to defend and indemnify Kopliku for bodily injuries caused by Kopliku in the course of its business, but contained a total pollution exclusion providing that:

> This insurance does not apply to ... "[b]odily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
> \*     \*     \*
>
> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

In November of 1994, Kopliku contracted with the Detroit, Michigan Board of Education to perform construction work, including painting and drywall sealing, at Cass Technical High School ("the High School"). Defendant–Appellee Roslyn Kellman ("Kellman") was a teacher at the High School. Kellman alleges that fumes from chemicals that Kopliku was using to seal a floor in the room immediately above Kellman's classroom caused her severe and disabling respiratory injuries. She brought a personal injury suit against Kopliku in Michigan state court in February of 1997.

Kopliku tendered the defense of Kellman's state court action to Meridian, which denied coverage on the basis of the total pollution exclusion, and defended Kopliku under a reservation of rights. Meridian then instituted this declaratory judgment action in federal district court, seeking a declaration that it had no duty to defend or indemnify Kopliku in Kellman's state court action.

The trial court ruled in Kopliku's favor on cross motions for summary judgment. Both sides agree that the sealer that caused Kellman's alleged injuries was a pollutant. The sole issue before the trial court, and on this appeal, was whether the movement of the vapors had been a "discharge, dispersal, seepage, migration, release or escape" of pollutants so as to bring the injuries within the insurance policy's total pollution exclusion. The trial court found that:

> the pollution exclusion clause is intended to protect the insurer from liability for the enforcement of environmental laws. The exclusion contains environmental terms of art because it is intended to exclude coverage only as it relates to environmental pollution. When a toxic substance is confined to an area of in-

---

[*] The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

tended use it does not come within the exclusion clause.

The primer/sealer was used in its intended manner inside Cass. The fact that the fumes from the primer allegedly injured Kellman one floor below does not turn the fumes into environmental pollution within the meaning of the total pollution exclusion clause. Therefore, Meridian has a contractual obligation to defend the insured, [Kopliku], in the underlying lawsuit.

Meridian appeals from that judgment. It argues that the movement of the fumes constituted "discharge, dispersal, seepage, migration, release or escape" as defined in the policy. On an appeal from summary judgment, we review the district court's judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997).

### DISCUSSION

The sole issue on appeal is whether the movement of fumes from a toxic chemical used to seal a floor in the course of an insured's business constitutes "discharge, dispersal, seepage, migration, release or escape" within the terms of an insurance policy's total pollution exclusion, when those fumes injure an employee of the institution for which the sealant is being applied, while that employee is working in a room on the floor immediately below the area where the sealer is being applied.

The insurance policy at issue must be construed according to Michigan law. In construing questions of state law, the federal court must apply state law in accordance with the controlling decisions of the highest court of the state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the state's highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue. The Court may use the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the "majority" rule in making this determination. *Grantham & Mann v. American Safety Prods.*, 831 F.2d 596, 608 (6th Cir. 1987). A federal court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

State and federal courts are split on the issue of whether an insurance policy's total pollution exclusion bars coverage for all injuries caused by contaminants, or whether the exclusion applies only to injuries caused by traditional environmental pollution. Many courts, including the Sixth Circuit, have held that a pollution exclusion clause in a CGL insurance policy applies only to injuries caused by traditional environmental pollution. *See, e.g., Nautilus Ins. Co. v. Jabar*, 188 F.3d 27, 30–31 (1st Cir.1999) (applying Maine law); *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 530–31 (9th Cir.1997) (applying Montana law); *Stoney Run Co. v. Prudential–LMI Commercial Ins. Co.*, 47 F.3d 34, 38 (2d Cir. 1995) (applying New York law); *Bituminous Cas. Corp. v. Advanced Adhesive Tech.*, 73 F.3d 335 (11th Cir.1996) (applying Georgia law); *Lumbermens Mut. Cas. Co. v. S–W Indus., Inc.*, 23 F.3d 970, 981–82 (6th Cir.1994) (applying Ohio law); *Regional Bank of Colo., N.A. v. St. Paul Fire and Marine Ins. Co.*, 35 F.3d 494, 498 (10th Cir.1994) (applying Colorado law); *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043–44 (7th Cir.1992); *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479 (3d Cir.1981); *Sphere Drake Ins. Co. v. Y.L. Realty Co.*, 990 F.Supp. 240 (S.D.N.Y.1997); *Lefrak Org., Inc. v. Chubb Custom Ins. Co.*, 942 F.Supp. 949 (S.D.N.Y.1996); *Island Assocs., Inc. v. Eric Group, Inc.*, 894 F.Supp. 200 (W.D.Pa.1995); *Center for Creative Studies v. Aetna Life & Cas. Co.*, 871 F.Supp.

941 (E.D.Mich.1994); *Minerva Enters., Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993); *American States Ins. Co. v. Koloms*, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72 (1997); *Thompson v. Temple*, 580 So.2d 1133 (La. Ct.App.1991); *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617 (1995); *Western Alliance Ins. Co. v. Gill*, 426 Mass. 115, 686 N.E.2d 997 (1997); *Cepeda v. Varveris*, 234 A.D.2d 497, 651 N.Y.S.2d 185 (2d Dept. 1996); *Kenyon v. Security Ins. Co.*, 163 Misc.2d 991, 626 N.Y.S.2d 347 (N.Y.Sup.Ct.1993); *West American Ins. Co. v. Tufco Flooring East, Inc.*, 104 N.C.App. 312, 409 S.E.2d 692 (1991); *Owens–Corning Fiberglas Corp. v. Allstate Ins. Co.*, 74 Ohio Misc.2d 144, 660 N.E.2d 746 (1993).

The Seventh Circuit has explained the reasoning behind limiting the application of pollution exclusion clauses only to injuries caused by traditional environmental pollution as follows:

> Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

To redress this problem, courts have taken a common sense approach when determining the scope of pollution exclusion clauses. [*Westchester Fire Ins. Co. v. City of Pittsburg*, 768 F.Supp. 1463, 1468–71 (D.Kan.1991) ], for instance, held that the clause did not bar coverage for injuries arising from an individual's ingestion of malathion during a municipal pesticide-spraying operation. Simi-

larly, *A–1 Sandblasting & Steamcleaning Co. v. Baiden*, 53 Or.App. 890, 632 P.2d 1377, 1379–80 (1981), *aff'd*, 293 Or. 17, 643 P.2d 1260 (1982), held that coverage was not barred for paint damage to vehicles which occurred during the spray painting of a bridge. *See also Atlantic Mut. Ins. Co. v. McFadden*, No. 90–5487, slip op. (Mass.Super.Ct. May 28, 1991) (clause does not bar recovery for apartment-dweller's ingestion of lead paint); *Cole v. Celotex Corp.*, No. 87–6170 (La.Dist. Feb. 15, 1990) (recovery not barred for release of asbestos particles during installation, handling and removal of insulation). The bond that links these cases is plain. All involve injuries resulting from everyday activities gone slightly, but not surprisingly, awry. There is nothing that unusual about paint peeling off of a wall, asbestos particles escaping during the installation or removal of insulation, or paint drifting off the mark during a spray painting job. A reasonable policyholder, these courts apparently believed, would not characterize such routine incidents as pollution.

*Pipefitters*, 976 F.2d at 1043–44.

Other courts, however, have held that a pollution exclusion bars coverage for all injuries caused by the release of contaminants, even where the contaminant is dispersed into a confined or indoor area. *See, e.g., Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1004–05 (4th Cir.1998) (applying Maryland law); *Technical Coating Applicators, Inc. v. United States Fidelity and Guar. Co.*, 157 F.3d 843, (11th Cir.1998) (applying Florida law); *West American Ins. Co. v. Band & Desenberg*, 138 F.3d 1428 (11th Cir.1998) (applying Florida law); *Reliance Ins. Co. v. Moessner*, 121 F.3d 895 (3d Cir.1997) (applying Pennsylvania law); *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co., Inc.*, 112 F.3d 184, 188 (5th Cir.1997) (applying Texas law); *American States Ins. Co. v. Nethery*, 79 F.3d 473 (5th Cir. 1996) (applying Mississippi law); *Longa-*

berger Co. v. United States Fidelity & Guar. Co., 31 F.Supp.2d 595 (S.D.Ohio 1998); Brown v. American Motorists Ins., 930 F.Supp. 207 (E.D.Pa.1996); Essex Ins. Co. v. Tri–Town Corp. 863 F.Supp. 38 (D.Mass.1994); Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135 (Fla.1998); American States Ins. Co. v. Zippro Constr. Co., 216 Ga.App. 499, 455 S.E.2d 133 (1995); Bernhardt v. Hartford Fire Ins. Co., 102 Md.App. 45, 648 A.2d 1047 (1994); Auto–Owners Ins. Co. v. Hanson, 588 N.W.2d 777 (Minn.Ct. App.1999); Demakos v. Travelers Ins. Co., 205 A.D.2d 731, 613 N.Y.S.2d 709 (2d Dept. 1994); Madison Const. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 735 A.2d 100 (1999); Cook v. Evanson, 83 Wash.App. 149, 920 P.2d 1223 (1996); Peace ex rel. Lerner v. Northwestern Nat'l Ins. Co., 228 Wis.2d 106, 596 N.W.2d 429 (1999).[1]

■ No Michigan state court appears to have addressed the issue.[2] In attempting to ascertain how a Michigan state court would rule if faced with the issue of whether the movement of fumes from a toxic chemical used to seal a floor in the course of an insured's business constitutes "discharge, dispersal, seepage, migration, release or escape" within the terms of an insurance policy's total pollution exclusion, when those fumes injure an employee on the floor immediately below the area where the sealer is being applied, therefore, we are guided by three general principles of insurance policy interpretation under Michigan law. First, although the court cannot create an ambiguity in an otherwise clear policy, any ambiguity in the policy must be construed in favor of the insured and in favor of coverage. Fire Ins. Exch. v. Diehl, 450 Mich. 678, 545 N.W.2d 602, 606 (1996); Vanguard Ins.

Co. v. Clarke, 438 Mich. 463, 475 N.W.2d 48, 52 (1991). Second, exemptions to coverage are strictly construed against the insurer. Id. Third, under the rule of reasonable expectations, the court grants coverage if "the policyholder, upon reading the contract language is led to a reasonable expectation of coverage." Id.

■ We find that the total pollution exclusion does not bar coverage for Kellman's injuries. First, in light of the disarray that characterized this area of law in 1994, and continues to characterize it today, no reasonable person could find that the insurance policy at issue unambiguously excluded coverage for injuries suffered by an employee who was legitimately in the immediate vicinity of the chemicals, and where the injury occurred only a few feet from where the chemicals were being used. Even viewed in the light most favorable to the insurance company, the policy is ambiguous as to whether it covered injuries caused by toxic chemicals in the immediate area of their intended use. Second, at the time the events giving rise to this suit took place, this Circuit had adopted a clear rule, albeit construing Ohio law, that a pollution exclusion did not shield the insurer from liability for "injuries caused by toxic substances that are still confined within the area of their intended use." Lumbermens, 23 F.3d at 982.

Meridian argues that the pollution exclusion clause in this case is distinguishable from the one at issue in Lumbermens because the clause in Lumbermens applied only to the discharge of pollutants "into or upon land, the atmosphere, or any watercourse or body of water," while the clause

---

1. For further discussion of the courts' split on this issue, see William B. Johnson, Annotation, *Construction and application of pollution exclusion clause in liability insurance policy,* 39 A.L.R.4th 1047 (1985 & supp.1999).

2. Approximately two weeks after the facts giving rise to this cause of action took place, a federal district court, applying Michigan law,

held that an absolute pollution exclusion did not bar coverage for injuries caused by fumes from photographic chemicals in a photographic laboratory. *Center for Creative Studies v. Aetna,* 871 F.Supp. 941 (E.D.Mich. 1994). That decision is not binding on us, but has some persuasive weight.

at issue in this case does not contain any such limitation.

We disagree. First, the clause that appeared in *Lumbermen's* is hardly limiting; it is difficult to conceive of any inorganic segment of the earth's biosphere that could not reasonably be classified as either land, air or water. Thus, the only type of pollution injury to which the *Lumbermens* clause would not apply would be a direct contact injury, without any medium of intermediation, to a human being or to personalty; in such a case, it would be a logical impossibility for there to have been a discharge or dispersal of pollutants. Land, air, and water are simply the only common media available through which pollutants are dispersed. Second, it is clear from the *Lumbermens* opinion that the panel that decided the case was primarily concerned with the construction of the terms "discharge," "disperse," "release" and "escape" when it held that "it strains the plain meaning, and obvious intent, of the language to suggest that these fumes, as they went from the container to [the injured party's] lungs, had somehow been 'discharged, dispersed, released or escaped.'" 23 F.3d at 982. The clause upon which Meridian seeks to rely to distinguish this case was not essential to the Sixth Circuit's opinion. Finally, even if Meridian had been able successfully to distinguish *Lumbermens* on the ground of the cited limitation, it cannot distinguish this case from the dozens of other reported opinions where courts have found pollution exclusion clauses in policies that did not contain such limiting language to bar coverage only for injuries caused by traditional environmental pollution. We find that the total pollution exclusion clause at bar does not shield the insurer from liability for injuries caused by toxic substances that are still confined within the general area of their intended use.

Meridian also claims that this case is distinguishable from cases holding that a pollution exclusion clause does not shield the insurer from liability for injuries caused by toxic substances that are still confined within the area of their intended use, because Kellman did not personally apply the sealer to the classroom floor. It argues that *Lumbermens* and its progeny apply only when the injury involves direct exposure to the harmful product by the user, not to another individual in an area removed from the area of use.

We need not decide whether the total pollution exclusion clause at issue would bar coverage if the chemical fumes had migrated over a distance, such as through the High School's HVAC system, and harmed people throughout the building. *Compare Clarendon Am. Ins. Co. v. Bay, Inc.*, 10 F.Supp.2d 736 (S.D.Tex.1998) (pollution exclusion barred coverage for inhalation injuries suffered by individuals who lived near cement plant, but did not bar coverage for contact exposure injuries suffered by those same individuals); *Essex Ins. Co. v. Tri–Town Corp.* 863 F.Supp. 38 (D.Mass.1994) (pollution exclusion barred coverage for carbon monoxide poisoning injuries caused by malfunctioning Zamboni in indoor ice skating rink); *Regent Ins. Co. v. Holmes*, 835 F.Supp. 579 (D.Kan.1993) (pollution exclusion did not bar coverage for injuries caused by localized spill of formic acid, although clause would have barred coverage for a large spill); *Demakos v. Travelers Ins. Co.*, 205 A.D.2d 731, 613 N.Y.S.2d 709 (2d Dept. 1994) (pollution exclusion barred coverage for injuries caused when cigarette smoke from pool and billiard club in basement of landlord's building traveled upstairs through air ducts to other areas of building); *but cf. American States Ins. Co. v. Koloms*, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72 (1997) (pollution exclusion did not bar coverage for carbon monoxide poisoning injuries caused by defective furnace in commercial building); *Western Alliance Ins. Co. v. Gill*, 426 Mass. 115, 686 N.E.2d 997 (1997) (pollution exclusion did not bar coverage for carbon monoxide poisoning injuries to restaurant patron caused by defective tandoori ovens). That is not this case.

The sealant that is alleged to have caused the harm in this case was applied directly to the floor of a seventh-floor classroom—*i.e.*, the other side of the ceiling of Kellman's sixth-floor classroom and harmed Kellman within a few feet of the area of its intended use. The fact that the injured party was not the direct user of a harmful product does not change a localized injury into the "discharge, dispersal, seepage, migration, release or escape of pollutants" under the policy, where the injured third party was in the immediate vicinity of the harmful product at the time of injury. The policy language does not clearly and unambiguously exclude coverage for such injuries. We therefore construe the total pollution exclusion clause against Meridian and in favor of coverage.

## CONCLUSION

For the foregoing reasons, the district court's judgment is hereby AFFIRMED.