McKUSICK v TRAVELERS INDEMNITY COMPANY

Docket No. 221171. Submitted January 4, 2001, at Grand Rapids. Decided June 8, 2001, at 9:05 A.M. Leave to appeal sought.

William F. McKusick and his wife and Faye L. Tietz and her husband brought products liability actions in Wisconsin against Hi-Tech Engineering, Inc., a Michigan corporation, which also was the designer and manufacturer of machinery and a high-pressure hose delivery system that failed, causing William and Faye to be exposed to and injured by a highly toxic substance during the course of their employment by Polaris Industries in Wisconsin. Hi-Tech notified its insurer, Travelers Indemnity Company, of the lawsuits, but Travelers denied coverage on the basis of a pollution exclusion in the policy. Hi-Tech filed an action in Michigan against Travelers, seeking a declaratory judgment regarding the insurance coverage. While the declaratory judgment action was pending, the plaintiffs and Hi-Tech entered into a settlement agreement regarding the products liability actions that included Hi-Tech's admission of liability, a judgment in favor of the plaintiffs, an agreement by Hi-Tech to pay a portion of the judgment, and an assignment to the plaintiffs of Hi-Tech's indemnification rights against Travelers. The plaintiffs then filed the present garnishment action in the Kent Circuit Court against Travelers, seeking to collect the balance of the Wisconsin judgment against Hi-Tech. The trial court in the declaratory judgment action granted summary disposition in favor of Travelers, finding the pollution exclusion applicable. The trial court in the garnishment action, David H. Soet, J., granted summary disposition in favor of Travelers, finding that Travelers owed no duty to insure or defend Hi-Tech in the underlying action and thus Hi-Tech had no indemnification rights to assign to the plaintiffs. The plaintiffs appealed from the judgment of the court in the garnishment action, and Travelers cross appealed from the judgment.

The Court of Appeals *held*:

1. The pollution exclusion in this case precludes coverage for the plaintiffs' underlying products liability claims. The court properly granted summary disposition in favor of Travelers.

2. The pollution exclusion applies when pollutants arise from the insured's work or products. The exclusion has no exceptions or

limitations regarding its scope, including the location or other characteristics of the discharge of the pollutants. The exclusion neither requires that contamination by a pollutant be widespread nor makes the exclusion applicable only to claims of environmental pollution, i.e., land, air, water, and other natural resource contamination.

3. Hi-Tech did not have a reasonable expectation of coverage.

4. The form provisions of the insurance contract do not override the pollution exclusion, which indicates that the exclusion modifies the coverage under the form provisions.

5. The release of the pollutants and the injuries to the plaintiffs have more than a remote connection to Hi-Tech's defective product.

Affirmed.

*Strain, Murphy & Vanderwal, P.C.* (by *Peter D. Bosch*), for the plaintiffs.

*Kelley, Casey & Clarke, P.C.* (by *Stephen M. Kelley, Timothy J. Clarke,* and *Kourtney N. Twenhafel*), for Travelers Indemnity Company.

Before: WILDER, P.J., and HOOD and CAVANAGH, JJ.

PER CURIAM. Plaintiffs appeal as of right, and defendant Travelers Indemnity Company cross appeals, from an order granting Travelers summary disposition, pursuant to MCR 2.116(C)(10), in this garnishment action. We affirm.

Plaintiffs William F. McKusick and Faye L. Tietz were employed by Polaris Industries in Osceola, Wisconsin.[1] In the course of their employment, a high-pressure hose delivery system used to carry polyhydroxyl resin and toluene diisocyanate (TDI) in the manufacture of polyurethane flexible foam failed,

---

[1] Plaintiffs Tammy K. McKusick and Robert Tietz alleged loss of consortium caused by their spouses' injuries. Because their claims are derivative, the term "plaintiffs" refers only to William F. McKusick and Faye L. Tietz.

causing plaintiffs to be exposed to and injured by TDI, a highly toxic substance. Hi-Tech Engineering, Inc., designed and manufactured the urethane machinery and high-pressure hose delivery system.

Thereafter, plaintiffs filed separate products liability actions against Hi-Tech in the state of Wisconsin. Hi-Tech notified its insurer, Travelers, of the pending lawsuits and Travelers denied coverage on the basis of a pollution exclusion endorsement in their commercial general liability (CGL) insurance contract. Hi-Tech then filed a declaratory judgment action in Michigan against Travelers, seeking insurance coverage for the products liability actions.

Before the resolution of the declaratory judgment action, plaintiffs and Hi-Tech entered into a settlement agreement regarding the products liability actions that included Hi-Tech's admission of liability, a judgment in favor of plaintiffs, an agreement by Hi-Tech to pay a portion of the judgment, and an assignment to plaintiffs of Hi-Tech's indemnification rights against Travelers. Plaintiffs then filed this garnishment action against Travelers to collect the balance owed on their Wisconsin judgment against Hi-Tech.

Subsequently, Travelers filed a motion for summary disposition with regard to Hi-Tech's declaratory judgment action. After considering the claims filed against Hi-Tech in the underlying lawsuit, the trial court held that plaintiffs' claims were precluded from coverage by the pollution exclusion endorsement and granted Travelers summary disposition. Travelers then filed a motion for summary disposition with regard to this garnishment action. The trial court granted the motion, holding that Travelers owed no duty to insure or defend Hi-Tech in the underlying lawsuit, thus Hi-

Tech had no indemnification rights to assign to plaintiffs, and that the assignment without Travelers' consent was invalid.

On appeal, plaintiffs argue that the trial court erred in summarily disposing of their claims against Travelers because the pollution exclusion endorsement did not apply to plaintiffs' products liability claims. We disagree. Travelers cross appeals arguing that res judicata barred plaintiffs' garnishment action; however, we need not address this issue.

This Court reviews a trial court's grant of a motion for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). When reviewing a motion brought under MCR 2.116(C)(10), this Court reviews the documentary evidence to determine whether a party was entitled to judgment as a matter of law or whether a genuine issue of material fact exists. *Id.* Interpretation of contractual language is an issue of law subject to review de novo. *Morley v Automobile Club of Michigan*, 458 Mich 459, 465; 581 NW2d 237 (1998).

An insurance policy is a contract that should be read as a whole to determine what the parties intended to agree on. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). In interpreting insurance policies, we are guided by well-established principles of construction. *Allstate Ins Co v Keillor (After Remand)*, 450 Mich 412, 416-417; 537 NW2d 589 (1995); *Michigan Millers Mut Ins Co v Bronson Plating Co*, 445 Mich 558, 567; 519 NW2d 864 (1994). The policy must be enforced in accordance with its terms; therefore, if the terms of the contract are clear, we cannot read ambiguities into the policy. *Farm Bureau Mut Ins Co of Michigan v*

*Nikkel,* 460 Mich 558, 566; 596 NW2d 915 (1999); *Bronson Plating Co, supra.* Clear and specific exclusionary clauses must be given effect, but are strictly construed in favor of the insured. *Fire Ins Exchange v Diehl,* 450 Mich 678, 687; 545 NW2d 602 (1996); *South Macomb Disposal Authority v American Ins Co (On Remand),* 225 Mich App 635, 653; 572 NW2d 686 (1997).

First, plaintiffs argue that the pollution exclusion provision contained in Travelers' insurance policy did not bar coverage for plaintiffs' products liability claims because the clause applied only to claims arising from traditional forms of environmental pollution. Plaintiffs rely on several cases from other jurisdictions in support of their argument, and Travelers rebuts this argument with several cases that declined to adopt that position. As discussed at length in *Meridian Mut Ins Co v Kellman,* 197 F3d 1178, 1181-1182 (CA 6, 1999), review of the relevant case law reveals that state and federal jurisdictions are divided on the issue whether pollution exclusion clauses should be limited in application to traditional forms of environmental pollution. However, we hold that the pollution exclusion provision at issue in this case precludes coverage for plaintiffs' underlying products liability claims; therefore, the trial court properly granted summary disposition in favor of Travelers.

In this case, the pollution exclusion endorsement to the CGL policy provides, in pertinent part:

This insurance does not apply to:

\*     .\*     \*

f. (1) "Bodily injury" or "property damage' " arising out of
the actual, alleged or threatened discharge, dispersal, seep-
age, migration, release or escape of pollutants:

\*          \*          \*

(d) Which arises out of "your work" . . . ; or
(e) Which arises out of "your product."

\*          \*          \*

Pollutants means any solid, liquid, gaseous, or thermal
irritant or contaminant, including smoke, vapor, soot,
fumes, acids, alkalis, chemicals and waste. Waste includes
materials to be recycled, reconditioned or reclaimed.

The CGL policy defines "your product" as follows:

a. Any goods or products, other than real property[,]
manufactured, sold, handled, distributed or disposed of by:
(1) You;

\*          \*          \*

b. Containers (other than vehicles), materials, parts or
equipment furnished in connection with such goods or
products.

This type of pollution exclusion has generally been
known as an "absolute pollution exclusion" and was
implemented by the insurance industry "to eliminate
all pollution claims." *McGuirk Sand & Gravel, Inc v
Meridian Mut Ins Co*, 220 Mich App 347, 354; 559
NW2d 93 (1996). The absolute pollution exclusion has
been interpreted by this Court, as well as many other
jurisdictions, to be clear and unambiguous in preclud-
ing coverage for claims arising from pollution. *Id.*
However, neither our Supreme Court nor this Court
has considered the version of the pollution exclusion
provision at issue in this case, nor has the exclusion

been interpreted in a similar factual context, i.e., where there is no polluting of land, water, air, or other natural resources.[2]

Other jurisdictions have addressed the issue whether an absolute pollution exclusion provision precluded coverage when the pollutant was confined to a relatively localized area, including the Sixth Circuit in *Kellman, supra*. In that case, the defendant, Kellman, allegedly sustained personal injuries after being exposed to fumes from chemicals used by the codefendant, in the course of his business, to seal a floor in a room immediately above where Kellman was working. The *Kellman* court, relying on *Lumbermens Mut Casualty Co v S-W Industries, Inc*, 23 F3d 970 (CA 6, 1994), aff'd in part, vacated in part, and remanded 39 F3d 1324 (CA 6, 1994), held that the pollution exclusion did not bar coverage because the provision did not unambiguously exclude coverage for injuries sustained by a person in the immediate area of where the chemicals were being used as they were intended to be used. *Kellman, supra* at 1183.[3]

---

[2] See *Protective Nat'l Ins Co of Omaha v Woodhaven*, 438 Mich 154; 476 NW2d 374 (1991); *Polkow v Citizens Ins Co of America*, 438 Mich 174; 476 NW2d 382 (1991); *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 206; 476 NW2d 392 (1991) (application of a " 'sudden and accidental' " exception to the pollution exclusion that precluded coverage when pollutants contaminated " 'land, the atmosphere or any watercourse or body of water' " in claims involving atmosphere, groundwater, and land contamination). See also *South Macomb Disposal Authority, supra; Traverse City Light & Power Bd v Home Ins Co*, 209 Mich App 112, 115; 530 NW2d 150 (1995); *Matakas v Citizens Mut Ins Co*, 202 Mich App 642, 649; 509 NW2d 898 (1993) (application of an unexpected or unintended exception to the pollution exclusion that precluded coverage when pollutants contaminated " 'land, the atmosphere or any water course or body of water' " in land and groundwater contamination claims).

[3] See also *Center for Creative Studies v Aetna Life & Casualty Co*, 871 F Supp 941, 946 (ED Mich, 1994), which relied on *Lumbermens, supra*, in

In *Lumbermens, supra,* an employee of the defendant, S-W Industries, Inc., suffered injuries after years of exposure to toxic cements and solvents and various congestive dusts created during rubber fabrication processing. In holding that the pollution exclusion did not preclude coverage, the *Lumbermens* court focused on the terms " 'discharge, dispersal, release or escape' " and held that the fumes and dust that caused the employee's injuries had not been discharged, dispersed, or released and had not escaped within the plain meaning and intent of those terms.[4] *Lumbermens, supra* at 981-982.

Plaintiffs primarily argue that *West American Ins Co v Tufco Flooring East, Inc,* 104 NC App 312; 409 SE2d 692 (1991), overruled on other grounds in *Gaston Co Dyeing Machine Co v Northfield Ins Co,* 351 NC 293; 524 SE2d 558 (2000), is apposite and stands for the proposition that only claims involving traditional forms of pollution are precluded by a pollution exclusion provision. In that case, the defendants were floor resurfacers and had performed such work, using several chemicals that contained styrene, in a chicken processing facility. It was alleged that chickens stored near where the resurfacing occurred were damaged by the vapors and fumes released from the chemicals used by the defendants during the resurfacing work. The court rejected the plaintiff insurer's argument that the pollution exclusion clause barred coverage for the resulting claims holding, in part, that the

---

holding that exposure to fumes during photograph developing did not result from a " 'discharge, dispersal, release or escape.' "

[4] The *Lumbermens* court did not characterize the terms as environmental terms of art, but merely assigned the terms their dictionary definitions. *Lumbermens, supra* at 981-982.

exclusion applied only to discharges into the environment as implied by the use of the terms " 'discharge,' " " 'dispersal,' " " 'release,' "   and   " 'escape,' " that the court concluded were environmental terms of art. *Tufco, supra* at 324.

However, these cases are factually distinguishable from the case at issue. First, the pollution exclusion provision in this case is more broad than the exclusions contemplated in these, as well as most other, cases because this exclusion applies when pollutants arise from the insured's work or products. Second, in this case, plaintiffs were not harmed by the inadvertent exposure to vapors and fumes from chemicals that were being used as they were intended to be used. Instead, plaintiffs' injuries were caused by their exposure to TDI when a high-pressure hose delivery system carrying TDI failed, causing TDI to be discharged or released in the manufacturing plant. It is not disputed that TDI is a pollutant within the plain meaning of the exclusionary provision in that it could be characterized as an irritant, contaminant, or chemical. Similarly, it is not disputed that the high-pressure hose delivery system was Hi-Tech's product. Consequently, resolution of this issue depends on whether the "discharge, dispersal, seepage, migration, release or escape" of the "pollutant" must be located in or affect a particular area to make the pollution exclusion provision applicable.

Plaintiffs urge us to construe the pollution exclusion provision so as to require that contamination by a pollutant be widespread, making the exclusion applicable only to claims of environmental pollution, i.e., land, air, water, and other natural resource contamination. However, we are bound by well-estab-

lished principles of contract construction, including that an insurance contract is not ambiguous if it fairly admits of only one interpretation. *Matakas v Citizens Mut Ins Co*, 202 Mich App 642, 649-650; 509 NW2d 898 (1993).

In this case, the pollution exclusion endorsement unambiguously provided that no coverage would be afforded for damage claims resulting from the discharge, dispersal, seepage, migration, release, or escape of pollutants, as defined by the policy, arising out of Hi-Tech's products. There are no exceptions to the exclusion and no limitations regarding its scope, including the location or other characteristics of the discharge. Although we recognize that other jurisdictions have considered the terms "discharge," "dispersal," "release," and "escape" to be environmental terms of art, thus requiring the pollutant to cause traditional environmental pollution before the exclusion is applicable, we cannot judicially engraft such limitation. This Court must enforce the insurance policy in accordance with its terms as interpreted in light of their commonly used, ordinary, and plain meanings. *Bianchi v Automobile Club of Michigan*, 437 Mich 65, 71, n 1; 467 NW2d 17 (1991); *Royce v Citizens Ins Co*, 219 Mich App 537, 542; 557 NW2d 144 (1996). We will not rewrite an insurance policy under the guise of interpretation or create an ambiguity where none exists. *Protective Nat'l Ins Co of Omaha v Woodhaven*, 438 Mich 154, 164; 476 NW2d 374 (1991).

Plaintiffs next argue that Hi-Tech was led to a reasonable expectation of coverage for products liability claims like the one at issue in this case. We disagree. As discussed earlier, the pollution exclusion clearly

and unambiguously provided that no coverage would be afforded for damage claims resulting from the discharge of a pollutant arising from Hi-Tech's products. The urethane machinery and high-pressure hose delivery system were Hi-Tech's products. Further, the primary change to Travelers' CGL policy resulting from the pollution exclusion endorsement was the addition of provisions excluding coverage for damages resulting from the discharge of a pollutant that "arises out of 'your work' " or that "arises out of 'your product.' " Hi-Tech could have discovered the clause on examination of the contract endorsement. See *Nikkel*, *supra* at 569. Consequently, any alleged expectation of coverage in circumstances involving the discharge of a pollutant from Hi-Tech's products was unreasonable.

Plaintiffs further argue that the insurance industry did not intend for pollution exclusion clauses to apply to nonenvironmental cases. Although examining the various types of policies used within the insurance industry may be helpful in determining the intent of the policies, the actual policy language remains the most important factor to be considered. *Waldan General Contractors, Inc v Michigan Mut Ins Co*, 227 Mich App 683, 686-687; 577 NW2d 139 (1998). In this case, we will not speculate about the intent of the insurance industry with regard to pollution exclusion clauses in general because the pollution exclusion endorsement at issue clearly and unambiguously precluded coverage for damages resulting from the discharge of a pollutant arising from Hi-Tech's product.

Next, plaintiffs argue that coverage for their injuries is provided under the products/completed operations hazard provision of the CGL policy because that

provision overrides the pollution exclusion endorsement. We disagree. The pollution exclusion endorsement specifically indicated that it modified coverage under the CGL coverage form. While the products/completed operations hazard provision suggests coverage generally for negligence resulting in damages arising from Hi-Tech's completed product or work, the pollution exclusion clearly provided an exception to that coverage when a pollutant was the cause of such damages. Clear and specific exclusions must be enforced. *Churchman, supra* at 567. Further, conflicts between the terms of an endorsement and the form provisions of an insurance contract are resolved in favor of the terms of the endorsement. *Hawkeye-Security Ins Co v Vector Constr Co*, 185 Mich App 369, 380; 460 NW2d 329 (1990).

Next, plaintiffs argue that neither the pollutant nor their injuries arose out of Hi-Tech's product as required by the pollution exclusion clause. First, plaintiffs contend that their injuries did not arise out of Hi-Tech's product because their injuries occurred when they were attempting to clean up the TDI spill, not during the initial spill. Second, plaintiffs contend that the pollution did not arise out of Hi-Tech's product because plaintiffs were injured by the TDI. We reject both arguments. A count cannot create ambiguity where none exists. *Churchman, supra*. While the term "arising out of" does not appear to have been defined in the context of a CGL policy, it has been interpreted in the areas of worker's compensation and automobile insurance law. To establish that an injury arose out of employment, the employee must illustrate that the injury occurred "as a circumstance of or incident to the employment relationship." *MacDonald*

*v Michigan Bell Telephone Co*, 132 Mich App 688, 692; 348 NW2d 12 (1984). To establish that an injury arose out of an automobile accident, the claimant must illustrate a causal connection that is more than incidental, fortuitous, or remote between the use of the motor vehicle and the injury. *Jones v Tronex Chemical Corp*, 129 Mich App 188, 192; 341 NW2d 469 (1983), quoting *DAIIE v Higginbotham*, 95 Mich App 213, 222; 290 NW2d 414 (1980). In this case, both the chemical release and plaintiffs' injuries have significantly more than a remote connection to Hi-Tech's defective product.

Finally, plaintiffs argue that Travelers breached its duty to defend Hi-Tech because at least some of the allegations in plaintiffs' complaints arguably came within policy coverage. This issue was not preserved for appeal because it was not decided by the trial court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999); *D'Avanzo v Wise & Marsac, PC*, 223 Mich App 314, 326; 565 NW2d 915 (1997). Moreover, a resolution of this issue is not necessary to the disposition of this garnishment action.

In sum, the trial court properly granted summary disposition in favor of Travelers pursuant to MCR 2.116(C)(10). In consideration of our holding, we need not address the res judicata issue raised by Travelers' cross appeal.

Affirmed.