RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

GENERATION CHANGERS CHURCH,

                    *Plaintiff-Appellant*,

    *v.*

CHURCH MUTUAL INSURANCE COMPANY,

                    *Defendant-Appellee*.

No. 24-5700

───────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:21-cv-00764—Aleta Arthur Trauger, District Judge.

Argued:  December 11, 2025

Decided and Filed:  February 23, 2026

Before:  McKEAGUE, GRIFFIN, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  T. Joseph Snodgrass, SNODGRASS LAW LLC, Minneapolis, Minnesota, for Appellant.  Ryan A. Strain, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Memphis, Tennessee, for Appellee.  **ON BRIEF:**  T. Joseph Snodgrass, SNODGRASS LAW LLC, Minneapolis, Minnesota, Erik D. Peterson, ERIK PETERSON LAW OFFICES PSC, Lexington, Kentucky, J. Brandon McWherter, MCWHERTER SCOTT BOBBITT PLC, Brentwood, Tennessee, for Appellant.  Ryan A. Strain, George T. Lewis, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Memphis, Tennessee, Daniel J. Ripper, LUTHER-ANDERSON, PLLP, Chattanooga, Tennessee, for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge.

A tornado passed through Tennessee, damaging two properties owned by plaintiff Generation Changers Church (GCC).  GCC filed a claim with its insurer, defendant Church Mutual Insurance Company (Church Mutual) to cover the damage.  Although Church Mutual made a payment on the claim, GCC alleges that Church Mutual improperly calculated the amount.  So GCC filed a putative class action on behalf of class members from ten states.  The district court certified a class with respect to class members from four states but not the remaining six.  It concluded that the unsettled nature of the law in these six states would make a ten-state class prohibitively unwieldy.  GCC argues that the district court erred in this respect because it failed to conduct an adequate *Erie*[1] analysis when addressing Federal Rule of Civil Procedure 23(b)(3)'s predominance prong.  Church Mutual counters that GCC lacks standing to assert claims on behalf of class members whose injuries arose under state laws other than Tennessee's.  We disagree that GCC lacks standing, and we agree that the district court abused its discretion by not conducting any *Erie* analysis with respect to five of the states—Kentucky, Ohio, Missouri, Mississippi, and Texas.  Accordingly, we vacate in part the order denying, in part, and granting, in part, class certification.

I.

A.

Church Mutual is a Wisconsin-based company that sells property insurance.  GCC, a Nashville-based church, purchased a Church Mutual policy for two of its properties.  In March 2020, a tornado damaged these properties and GCC filed a claim with Church Mutual.

_____

[1]*Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938).

The insurance policy entitled GCC to the "actual cash value" (ACV) of its losses.  Under the policy, Church Mutual calculates the ACV as the repair or replacement value of the property minus depreciation.  The policy is silent on whether the ACV calculation subtracts depreciation for non-material costs—like labor—as it does for material costs.  In this context, labor costs refer to non-materials such as the laborers' equipment costs, the cost of removing the damaged property, and the laborers' overhead and profit related to restoring the property to its condition immediately before the loss.  Church Mutual included both types of depreciation when calculating the ACV of GCC's losses, which led to a payment less than what GCC expected.

### B.

GCC sued, alleging that Church Mutual should have paid an additional $26,749 under the insurance policy and Tennessee law.  GCC also asserted that Church Mutual's practice of subtracting depreciation for non-material costs when calculating the ACV violates the laws of Arizona, California, Illinois, Kentucky, Missouri, Mississippi, Ohio, Texas, and Vermont.  Accordingly, GCC sought class certification of similarly situated policyholders in these states who had also filed claims with Church Mutual and received improperly reduced ACV payments based on Church Mutual's inclusion of non-material depreciation costs in its calculation.  Church Mutual moved to dismiss the putative class action, arguing that GCC lacked Article III standing to pursue claims under the laws of states in which it did not reside.  In the alternative, Church Mutual moved for judgment on the pleadings with respect to Texas law because, it argued, Texas law permits insurers to depreciate non-materials when calculating the ACV.  GCC opposed the motion and moved for class certification of a ten-state class.  The district court resolved the motions together.

The district court held that GCC's ability to vindicate others' claims is determined under Rule 23, which is separate from Article III standing, and thus rejected Church Mutual's assertion that GCC lacked standing to maintain the class claims.

The district court then considered Church Mutual's motion for judgment on the pleadings on whether Texas law permits insurers to depreciate non-material costs.  Applying *Erie*, the district court sought to predict how the Texas Supreme Court would answer this question.  To do so, the district court looked to the Court of Appeals for the Fifth Circuit and federal district court

decisions. The district court noted that some of these courts held that Mississippi law was materially indistinguishable from Texas law, and in *Mitchell v. State Farm Fire & Casualty Co.*, 954 F.3d 700, 704 (5th Cir. 2020), the Fifth Circuit held that "ACV" was an ambiguous term under Mississippi law. *Sims v. Allstate Fire & Cas. Ins. Co.*, 650 F. Supp. 3d 540, 544 (W.D. Tex. 2023) (citing *Mitchell*, 954 F.3d at 705–07). And Texas law construes ambiguous terms against the insurer. *See RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). The district court then denied Church Mutual's request for judgment on the pleadings.

The district court then turned to GCC's motion for class certification. The district court analyzed each of Rule 23(a)'s requirements and found that GCC had satisfied its burden. The district court then shifted to the predominance inquiry under Rule 23(b)(3), focusing on whether the various state laws might materially diverge. Four states, the district court held, addressed depreciation through authoritative sources—either their courts of last resort (Arizona, Illinois, and Tennessee) or by statute (California)—so common issues prevailed for those states. But for the six remaining states, the district court found the authorities provided by GCC insufficient because no binding state court decision or regulation existed that addressed the ACV depreciation issue. The district court declined to certify a class with respect to these states and concluded,

> It is, however, the unsettled nature of the laws of several of the states—not merely their capacity for divergence—that would make a ten-state class prohibitively unwieldy. The problem is not that class members in some states might win, while class members in other states might lose. It is that, for six of those states, the court would have to embark upon a unique, state-by-state investigation before it could reach a conclusion regarding which of those outcomes is called for.

Although the district court held that GCC had failed to meet it predominance burden for its entire ten-state proposed class, it exercised its discretion to modify the class definition and certified a class encompassing class members from Arizona, California, Illinois, and Tennessee. This class, according to the district court, was both sufficiently ascertainable and superior to other methods of adjudication under Rule 23(b).

GCC asked for permission to appeal the district court's decision. We granted the petition.

## II.

Before addressing the merits of GCC's appeal, we must address the threshold question of whether GCC has standing to maintain its class action lawsuit.  Church Mutual asserts that GCC lacks standing to assert claims on behalf of class members under the laws of states in which it does not reside or in which it suffered no injury.  GCC is a citizen of Tennessee, owns no property outside of Tennessee, and suffered no injury outside of Tennessee.  Thus, Church Mutual insists GCC lacks standing to represent class members whose claims are governed by the laws of states other than Tennessee or arose outside of Tennessee.  We disagree.

### A.

We review Article III standing de novo.  *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 319 (6th Cir. 2023).  To establish standing, a plaintiff must allege (1) an "injury in fact" that is concrete, particularized, and actual or imminent, (2) "a causal connection between the injury and the conduct complained of," and (3) redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)).  But "class representatives without personal standing cannot predicate standing on injuries suffered by members of the class but which they themselves have not or will not suffer."  *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  Because of this rule, a plaintiff lacks standing to "pursue[] litigation on behalf of absent parties against a defendant who had not harmed the plaintiff."  *Fox v. Saginaw County*, 67 F.4th 284, 288 (6th Cir. 2023).

There remains, however, the "question whether the relevance of [] variation" between a named plaintiff's claims and the putative class's claims "is a matter of Article III standing at all or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure

23(a)."  *Gratz v. Bollinger*, 539 U.S. 244, 263 (2003).  Courts have adopted two differing approaches to address this question: the "standing approach" and the "class certification approach."  *See Speerly v. Gen. Motors*, *LLC*, 143 F.4th 306, 340 (6th Cir. 2025) (en banc) (Thapar, J., concurring) (quoting 1 W. Rubenstein, Newberg on Class Actions § 2:6 (6th ed. 2025)).  Because neither approach bars GCC from pursuing its claims, we need not resolve which approach is appropriate.[2]

B.

"Under the standing approach, a named plaintiff may litigate only on behalf of those whose harms are a close match for the harms he suffered."  *Id.*  And this is because "a plaintiff who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."  *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).  Accordingly, this approach "requires an examination of how the harms that the named plaintiff suffered compare to the harms that the unnamed class members suffered."  *Speerly*, 143 F.4th at 341 (Thapar, J., concurring).

In *Blum*, the Court held that the named plaintiffs had standing to challenge the procedural adequacy of a nursing home's decision to discharge patients or transfer patients to *lower* levels of care because they had been subjected to such a transfer.  457 U.S. at 1000.  But they did not have standing to challenge the procedural adequacy of a nursing home's decision to transfer patients to *higher* levels of care because none of the named plaintiffs had been subjected to this type of transfer, so their harm was speculative.  *Id.* at 1001.  The higher-level transfers were also "sufficiently different from those which [the plaintiffs had] standing to challenge" because there was a substantial difference between discharge and lower-level transfers—which result in a decreased amount of care and less Medicaid benefits—and higher-level transfers—which result in an increased amount of care and more Medicaid benefits.  *Id.* at 1001–02.  Thus, the named

---

[2]One of our colleagues has suggested that our court has adopted the class certification approach.  *See Speerly*, 143 F.4th at 343 (Thapar, J., concurring) (citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998)).  But we have yet to explicitly endorse this view in a published decision.

plaintiffs lacked standing to challenge conduct that was dissimilar and distinct from the conduct they faced. *Id.*

Here, GCC alleges a claim for breach of contract and a claim for declaratory judgment. GCC seeks certification of a putative class with members who, like GCC, were insured by Church Mutual, had structural damage to their property, filed a claim, and received an ACV amount that was reduced for depreciated non-material costs. Church Mutual used the same three standard policies for GCC and all putative class members, which were materially identical for purposes of depreciation, and utilized the same computer software to depreciate non-material costs for GCC and all putative class members. So no material distinction exists between GCC's claims and the class claims. They all suffered the same alleged injury—a reduced ACV payment from Church Mutual because it included the depreciation of non-material costs in its calculation. And all claims, by GCC and the putative class, may be redressed the same way—by money and a declaratory judgment. Thus, the harms suffered by putative class members "are a close match for the harms [GCC] suffered." *Speerly*, 143 F.4th at 340 (Thapar, J., concurring).

Church Mutual resists this conclusion. In its view, GCC brings more than two claims because it alleges a breach-of-contract claim and a declaratory-judgment claim under the laws of ten states. And, according to Church Mutual, because GCC does not allege that it owns property or suffered damages outside of Tennessee, it must lack standing to pursue the non-Tennessee class claims.

But to focus the standing inquiry on whether a plaintiff satisfies a particular state's law confuses statutory standing, which merely considers "whether any cause of action exists under a particular statute," with Article III standing, which concerns whether the plaintiff has suffered a concrete injury. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998); *accord Mayor of Balt. v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021) (noting that even though the named plaintiffs lacked statutory standing to personally invoke other states' laws, "[i]f the Rule 23 requirements are met, the plaintiffs could then represent the class members who sustained damages under those laws"); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (noting that whether a plaintiff has a redressable injury is distinct from the "choice of law" question of whether he may avail himself of a particular statute). Although "[t]he question [of

statutory standing] is closely related to the merits inquiry (oftentimes overlapping it)," it "is analytically distinct from the question whether a federal court has subject-matter jurisdiction to decide the merits of a case." *Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011); *see Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) (distinguishing the concepts of Article III standing from causes of action). "Where a plaintiff lacks statutory standing to sue, [its] claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction." *Roberts*, 655 F.3d at 581.

GCC has suffered a concrete injury. That injury is sufficiently similar to the injuries of each putative class member. So GCC satisfies the standing approach.

C.

Unlike the standing approach, the class certification approach simply asks whether "a named plaintiff . . . has standing to bring a claim." *Speerly*, 143 F.4th at 342 (Thapar, J., concurring). If a plaintiff does, "the standing inquiry is at an end," and the court then "compare[s] the harms of the named representative and the would-be unnamed class members . . . through the lens of Rule 23, not justiciability." *Id.*

GCC alleges that Church Mutual breached their contract and paid GCC less than it was entitled. Because GCC has standing to sue based on that injury, the Article III inquiry reaches its end. To determine whether GCC may represent putative class members, we ask whether GCC meets the prerequisites of Rule 23. *See Fallick*, 162 F.3d at 423. The district court found that it did, which means that GCC satisfies the class certification approach as well. And Church Mutual does not challenge the district court's Rule 23 analysis on appeal. GCC does, however, challenge the district court's partial denial of class certification, which we address next.

III.

We review a decision regarding class certification for abuse of discretion. *Speerly*, 143 F.4th at 315. "A district court abuses its discretion if it misstates the law, relies on clearly erroneous facts, or makes a 'clear error of judgment.'" *Id.* (quoting *In re Ford Motor Co.*, 86 F.4th 723, 727 (6th Cir. 2023) (per curiam)).

A.

After satisfying the requirements of Rule 23(a), a class action may only be maintained if it falls within one of three types of class actions provided for in Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). GCC relies on Rule 23(b)(3).

GCC must show that (1) common questions of law or fact "predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requires a court to "add up all the suit's common issues (those that the court can resolve in a yes-or-no fashion for the class) and all of its individual issues (those that the court must resolve on an individual-by-individual basis)" and "then qualitatively evaluate which side 'predominates' over the other." *Fox*, 67 F.4th at 300 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016)). In other words, the predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Tyson Foods*, 577 U.S. at 453 (citation modified). And if at least one of the main issues is "common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citation modified).

"The plaintiffs must affirmatively 'prove' that the class meets the prerequisites for certification." *Speerly*, 143 F.4th at 316 (quoting *Dukes*, 564 U.S. at 350). "And they must do so with 'significant proof.'" *Id.* (quoting *Dukes*, 564 U.S. at 353). We are similarly demanding of district courts, which "must 'probe behind the pleadings' and conduct a 'rigorous' examination to ensure that the class satisfies Rule 23[(b)] before transforming the retail disposition of claims into the wholesale disposition of them." *Id.* (quoting *Dukes*, 564 U.S. at 350–51).

B.

The district court found that GCC failed to show common issues would predominate over individual issues because of the unsettled nature of six states' laws and their capacity for divergence. Accordingly, the district court declined to certify a class that included claims arising

under the laws of Kentucky, Ohio, Missouri, Mississippi, Texas, and Vermont.  GCC contends this was error.  We agree it was error with respect to the first five states but not Vermont.

When a federal court seeks to interpret state law, it must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Id.* at 320 (quoting *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)).  Absent a definitive decision by a relevant court of last resort, "the court must 'anticipate' through an educated guess 'how the relevant state's highest court would rule.'" *Id.* (quoting *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013)).  To do so, courts "may use the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule in making [its *Erie*] determination." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).  And a court "should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.*  "This rule applies regardless of whether the appellate court decision is published or unpublished." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (citation modified).

Here, GCC presented to the district court a multi-state survey supporting its claim that each of the ten states applies the same approach to depreciation of non-materials in ambiguous contracts and construes this ambiguity against the insurer.  But the district court found the survey mostly lacking.  For six of the states, GCC relied on intermediate state appellate court decisions, decisions of federal courts discerning state law, and non-binding regulatory guidance.  The district court explained that although helpful, these authorities were far from determinative.  After all, even our decisions may "be superseded by the relevant state court of last resort at any time."  The district court "therefore would be required to do a complete, fresh *Erie* analysis for each of the relevant states," which it declined to do, and so it denied class certification as to these states.  This was error.

A party has the initial burden to provide a court with authorities for its position.  *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007).  But once it does that, a court has the affirmative duty to resolve the issues before it—even the tough ones.  *See Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010).  Here,

the district court's refusal to analyze any authority but state supreme court decisions or statutes runs afoul of this demand. With no explanation, the district court discounted GCC's cited authorities.

*First*, GCC presented binding authorities with respect to Ohio and Kentucky law. GCC cited *Hicks v. State Farm Fire & Casualty Co. (Hicks I)*, 751 F. App'x 703, 711 (6th Cir. 2018), where we held that Kentucky law did not allow depreciation of labor costs unless unambiguously permitted in the insurance policy. And we adopted that holding in *Hicks v. State Farm Fire & Casualty Co. (Hicks II)*, 965 F.3d 452, 463 (6th Cir. 2020). We reached the same conclusion about Ohio law in *Perry v. Allstate Indemnity Co.*, 953 F.3d 417 (6th Cir. 2020), and reaffirmed that holding in *Cranfield v. State Farm Fire & Casualty Co.*, 798 F. App'x 929, 930 (6th Cir. 2020) (per curiam), which GCC cited. GCC posited that both *Hicks I* and *Cranfield* served as authoritative *Erie* predictions of Kentucky and Ohio law. And for good reason. After all, both holdings were binding on the district court at that time. *See Hicks II*, 965 F.3d at 463; *Perry*, 953 F.3d at 423. The district court discounted these binding decisions, however, with the blanket statement that binding "*Erie*-based precedents [are] more malleable than other precedents" because they are more readily "subject to revisiting based on new data, such as new [state] intermediate appellate court opinions." But the district court did not explain why our decisions were not binding, nor did it point to a decision from a Kentucky or Ohio court suggesting that "they would have decided [our decisions] differently." *Blaine Constr. Corp. v. Ins. Co. of N. Am.*, 171 F.3d 343, 350 (6th Cir. 1999). Although a district court may strike its own path through state law, it must first explain why our decisions should not be followed. The district court did not do that here.

*Second*, GCC also presented persuasive federal authorities with respect to Mississippi and Texas law. GCC's authorities included a published 2020 decision from the Fifth Circuit interpreting Mississippi law and two unpublished 2023 Western District of Texas decisions interpreting Texas law. And earlier in its opinion, the district court resolved Church Mutual's motion for judgment on the pleadings with respect to Texas law after conducting an *Erie* analysis. In doing so, the district court found GCC's cases persuasive and extended the reasoning in *Mitchell* (the Fifth Circuit decision on Mississippi law) to Texas law. This led to the "inescapable"

conclusion that the policy is ambiguous and "Texas law required the court to construe the term in favor of the insured." Despite such a strong conclusion earlier in its decision, however, the district court demurred later on, because "this [was] merely its best guess as to what Texas law is on this subject, and that guess may be wrong." But the district court did not explain why its previous *Erie* determination did not apply to its predominance analysis. A prediction may always be wrong. But federal courts must still predict what state law says. And published precedent from sister circuits is especially persuasive when it comes to interpreting the law of states within their circuits. *See In re Dow Corning Corp.*, 778 F.3d 545, 548–49 (6th Cir. 2015) ("We usually defer to our sister circuits' analyses of the law of the states within their respective borders." (citation modified)). The district court failed to consider this.

*Third*, GCC presented persuasive intermediate state court authority with respect to Missouri law. Despite our direction that courts "should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise," *Meridian Mut. Ins.*, 197 F.3d at 1181, the district court discounted the intermediate court decision without explanation. *See Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 630 n.3 (1988) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). This too was error.

In sum, GCC presented both binding and persuasive authorities interpreting the laws of Kentucky, Ohio, Mississippi, Texas, and Missouri. The district court should therefore have conducted an *Erie* analysis with respect to each state. Because it failed to do so, the district court abused its discretion. On remand the district court should conduct *Erie* analyses with respect to Kentucky, Ohio, Mississippi, Texas, and Missouri and predict how each state's highest court would address the ACV issue to determine whether class certification for putative class members from these states would be appropriate.

However, the district court did not abuse its discretion when it declined to certify a class that included Vermont class members. In support of its interpretation of Vermont law, GCC relied exclusively on a Vermont Department of Financial Regulation Insurance Bulletin to establish the

contours of Vermont law.  *See* Vt. Ins. Bulletin No. 184 (May 1, 2015).  The district court found such proof insufficient because Vermont Insurance Bulletins "establish neither binding norms nor finally determine issues or rights."  Vt. Ins. Bulletin No. 174, 2013 WL 1759873, at *2 (Apr. 22, 2013).  And the proffered Bulletin merely interprets a Vermont statute that says nothing about the depreciation of non-material costs.  *See* Vt. Stat. Ann. tit. 8, § 4724(9)(F).  Because GCC carries the burden and it offered only a single, non-binding advisory bulletin as proof of Vermont law, the district court was within its discretion to find the proof insufficient to satisfy Rule 23(b)'s predominance requirement with respect to putative class members from Vermont.

* * *

For the foregoing reasons, we vacate the district court's class-certification order in part and remand for further proceedings consistent with this opinion.