### BREWER v. STODDARD.

1. BANKS AND BANKING—NATIONAL BANKS—DIRECTORS—OFFICERS.
   Under the national banking act the stockholders of a bank elect the directors who, in turn, appoint the officers and usually fix the latter's salaries (12 USCA, § 24).

2. CONTRACTS—CONTROL OF BANKS—SALARIES—PUBLIC POLICY.
   Contract to secure control of banks and share equally in salaries received as officers thereof, not made for the purpose of benefiting the stockholders, is against public policy and unenforceable.

3. CORPORATIONS—FIDUCIARY RELATION BETWEEN SHAREHOLDERS.
   Shareholders in a corporation occupy a fiduciary relationship to other shareholders.

Bargain by official of corporation for a consideration to exercise his powers in a certain way is illegal, see 2 Restatement, Contracts, § 569.

4. SAME—CONTRACT FOR SALE OF OFFICE—PUBLIC POLICY.

An agreement by one of the stockholders of a corporation for the sale, directly or indirectly, of an office or a permanent position therein is against public policy even though the contracting stockholder had shares sufficient to give him control in the election of officers since by such agreement he might be required to act contrary to the duty he owed the company and other stockholders.

5. BANKS AND BANKING—CONTRACT TO CONTROL BANK AND SHARE SALARY—STOCKHOLDERS—PUBLIC POLICY.

A contract by a stockholder and another to manage and control a bank and share equally in the salaries and compensation received by them was more than a voting trust and was illegal since it was not in the interest of the stockholders and the public but solely for the profit and interest of the contracting parties.

6. JOINT ADVENTURES—CONTRACTS—ILLEGAL ENTERPRISE.

A contract setting forth the rights of parties to a joint enterprise will not be enforced where it is for the purpose of engaging in an illegal venture.

7. CONTRACTS—OPTION TO PURCHASE STOCK.

A contract giving plaintiff an option to purchase stock in a bank will not be enforced where the option was never exercised.

8. SAME—PERSONAL SERVICES—DEATH.

A contract calling for personal services by one of the parties is terminated by the death of such party.

9. JOINT ADVENTURES—PERSONAL SERVICES—CONTRACTS—PARTNERSHIP.

To the extent that a contract calls for personal services under a joint venture the rights and liabilities of the parties should be governed by the rules which govern partnerships.

10. PARTNERSHIP—DEATH—DISSOLUTION OF FIRM.

The death of a partner dissolves a partnership.

11. ACCOUNTING—CONTRACTS—PUBLIC POLICY—MOTION TO DISMISS.

Motion to dismiss suit for accounting under agreement, attached to the bill of complaint, was properly granted where agreement was contrary to public policy and unenforceable.

Appeal from Eaton; McDonald (Archie D.), J. Submitted April 6, 1944. (Docket No. 38, Calendar No. 42,680.) Decided June 5, 1944.

Bill by Joseph Hillyer Brewer, executor of the estate of Joseph H. Brewer, deceased, against Howard J. Stoddard for an accounting. Bill dismissed. Plaintiff appeals. Affirmed.

*McPherson, Harrington, Waer & Cary,* for plaintiff.

*Shields, Ballard, Jennings & Taber,* for defendant.

BUTZEL, J. On January 2, 1940, Charles B. Bohn of Grosse Pointe Park, Michigan, as seller, entered into a written contract with Howard J. Stoddard, of Lansing, Michigan, defendant herein, as buyer, for the sale of large blocks of stock in the First National Bank of Port Huron, First National Bank of Battle Creek, First National Bank & Trust Company of Grand Rapids, Lansing National Bank and Saginaw State Bank, for the sum of $231,858.77, to be paid with interest on or before three years from the date of the contract and for which amount Stoddard gave his note to Bohn and pledged the stock as security. The contract superseded a previous one entered into on April 13, 1937.

On June 10, 1940, Stoddard entered into an agreement with Joseph H. Brewer, now deceased, of whose estate plaintiff is executor. It recited that previous to the contract of January 2, 1940, between Bohn and Stoddard, Joseph H. Brewer, plaintiff's decedent, had an agreement with Stoddard under the terms of which decedent, at his election up to January 2, 1944, might join in the purchase of the bank stocks being acquired from Charles B. Bohn by furnishing one-half of the funds necessary to purchase the stock, that the decedent and Stoddard would share and share alike in the joint venture of acquiring bank stocks, and in the operation and development of the banks, whether they be operated

as separate units or be consolidated, and that the profits and losses of such joint venture and the compensation of the parties for services in connection therewith should be divided equally. It further recited that it was the intention that the rights of decedent should not be modified or affected by this agreement of January 2, 1940, between Bohn and Stoddard, and that it was mutually agreed as follows:

"1

"First party agrees that his rights under said contract between himself and said Charles B. Bohn, dated January 2, 1940, are held by him subject to his agreement with second party that second party shall have the right at his option up to January 2, 1944, to acquire one-half of the shares of bank stocks that may be acquired by first party under said contract between him and Charles B. Bohn dated January 2, 1940, by payment of one-half of the net investment of first party in said stocks plus interest at the rate of three per cent per annum to January 2, 1944, upon any payments made by first party under said contract prior to that date, the acquisition by the party of the second part to be on the proportionate basis which the five above-mentioned stocks bear to each other.

2

"It is agreed between the parties hereto that whether said banks shall be operated as separate units or shall be merged or consolidated into one or more units, the parties hereto shall share equally in the control of said bank or banks to the extent that they, or either of them, shall be able to control and manage said bank or banks, and they shall share equally in the compensation or salaries received by them, or either of them, as officers or as an officer of said bank or banks, until said stocks to be acquired under said contract dated January 2, 1940, shall be fully paid for and equally divided between the parties hereto.

3

"It is agreed that the parties hereto shall share equally in the profits or losses resulting from any transactions involving the acquisition of any other bank or banks or the disposition of any stocks representing the ownership of the above banks, whether merged or not, and the disposition of the stocks of any bank or banks acquired subsequent to this date.

4

"It is further agreed between the parties hereto that all or any portion of the above listed stocks, if offered for sale, be first offered to each other or Charles B. Bohn."

Joseph H. Brewer died February 9, 1943, and plaintiff was appointed executor. Neither plaintiff nor his decedent paid any sums whatsoever to Stoddard. On March 12, 1943, Stoddard advised plaintiff that he disclaimed all obligations under the contract and that the contract, therefore, would not be an asset of the Brewer estate.

In December, 1940, the banks, in which stocks had been purchased by Mr. Stoddard from Bohn, were consolidated and defendant received 17,749 shares of stock of the Michigan National Bank in exchange for the shares of stock he had purchased from Bohn. Plaintiff in his bill of complaint alleges that the stock of the Michigan National Bank issued for the stocks purchased from Bohn had a market value of $381,603.50. This would indicate an approximate profit of $150,000 if the stock were sold at such price. Plaintiff further alleges on information and belief that other transactions involving the purchase of bank stocks occurred subsequent to June 10, 1940, and that these transactions, of which he has no record, would also come under the contract; that there has been no accounting between Stoddard and either decedent or himself. He asks that Stoddard be

ordered to make a full disclosure of all transactions, that a complete accounting be made, and that Stoddard be compelled to pay plaintiff the full amount of the damage to the estate of Joseph H. Brewer caused by the repudiation by Stoddard on March 12, 1943, of his obligations under the contract, the material parts of which have been heretofore set forth.

Defendant claims that any contract that preceded that of June 10, 1940, was in parol, void as against public policy, and without consideration. He also contends that the contract of June 10, 1940, was not supported by any consideration and was void because it was against public policy. He further alleges that neither plaintiff nor his decedent ever paid, or offered to pay, any part of the purchase price of the stocks. He, therefore, asked that the bill be dismissed. The parties regarded the pleadings as a motion to dismiss, and the trial judge entered an order of dismissal.

Plaintiff on appeal presents only two questions. The main one is whether the contract is against public policy and, therefore, unenforceable. Defendant reframes this question and asks whether an option agreement is against public policy and void for the reason that it couples with the sale of the stock in a banking corporation an agreement by the parties to share equally in the control of the bank to the extent that either of them shall be able to control and manage said bank, and also share equally in the compensation and salaries received by them or either of them as such officers of the bank until such time as the bank stocks are fully paid for. The question resolves itself around paragraph 2 of the agreement, where it is provided in part:

"It is agreed * * * the parties hereto shall share equally in the control of said bank or banks,

\* \* \* and they shall share equally in the \* \* \* salaries received by them, \* \* \* as officers \* \* \*. of said bank or banks, until said stocks \* \* \* shall be fully paid for and equally divided between the parties hereto.''

Under the national banking act, 12 USCA, § 24 (4 F. C. A. p. 6), stockholders of the bank elect the directors who in turn appoint the officers. The directors, as a rule, fix the salaries of the officers. This is not a voting trust agreement entered into by the stockholders, but an agreement by the parties to secure control of the banks and share equally in the salaries received by them as officers of the banks. It was not made for the purpose of benefiting the stockholders of the bank but for securing control of the banking corporations and dividing salaries. We believe the contract was against public policy. Such a contract will not be enforced. Shareholders in a corporation occupy a fiduciary relationship to other shareholders. In *Wilbur* v. *Stoepel,* 82 Mich. 344 (21 Am. St. Rep. 568), an agreement was made by two of three stockholders that the vendee of stock would be employed by the corporation for two years and if at the end of that time he desired to retire from the corporation, the stock would be repurchased at a stated price. Objection was made by the third stockholder, and in holding that the agreement was against public policy, we said:

''This alleged agreement between the defendants, who owned a majority of the stock, and the plaintiff, is contrary to public policy, and void as against those not consenting to it. The defendants were directors, and, in the management of the corporate affairs, cannot but be unduly influenced by such an agreement. Their natural desire and inclination would be to continue the plaintiff as manager, although it were against the interest of the stock-

holders, and would be against their own as stockholders, but for the agreement which might render them liable for the payment of a large sum if they failed to retain him. Nor is such contract made valid by the good faith of the parties to it. Its effect upon stockholders who are not parties to it, or do not consent to it, is the same in the one case as in the other. The law therefore wisely condemns and prohibits all such contracts. The supreme court of the United States has so decided in a recent case, under facts very similar to the case at bar. *West* v. *Camden,* 135 U. S. 507 (10 Sup. Ct. 838, 34 L. Ed. 254), and authorities there cited.''

In *West* v. *Camden,* 135 U. S. 507 (10 Sup. Ct. 838, 34 L. Ed. 254), where again the question of permanently retaining a stockholder as vice-president at a fixed salary in consideration of the sale to the company of a competing company, the court held that it was against public policy, and stated, p. 520:

''The agreement alleged to have been made was one on the part of the defendant whereby he might be required to act contrary to the duty, which, as an officer of the Baltimore United Oil Company, he owed to that company and to the stockholders other than the plaintiff. The same rule which is applicable to the case of a public office applies to the present case, although it does not appear that the defendant was to receive direct, personal, pecuniary compensation or gain for what he was to do. The plaintiff on his own showing dealt with the defendant in reference to the fiduciary relation which the latter bore to the stockholders, both of the Standard Oil Company and of the Baltimore United Oil Company. The agreement alleged was an agreement which bound the defendant as to his future action as a director of the Baltimore United Oil Company and an agreement to keep the plaintiff permanently in the position of vice-president of that company irrespective of its interests. It amounted to a situa-

tion on the part of the defendant that no contingency should happen which would require a change of management and a reduction of expenses."

In *Scripps* v. *Sweeney,* 160 Mich. 148, the same question was discussed and it was stated, quoting from *Jones* v. *Williams,* 139 Mo. 1, 32 (39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 Am. St. Rep. 436):

"But it is said that the contract is against public policy and void for the reason that it couples with the sale of stock in the corporation an agreement to give to the purchaser a position for five years at a large salary, and in addition the position of director and president of the corporation.

"Counsel cite many cases in support of their position. It is undoubtedly true that an agreement by one of the stockholders for the sale, directly or indirectly, of an office in a corporation or of a permanent position therein would be against public policy and void, though the contracting stockholder had shares sufficient in amount to give him control in the election of officers. By such agreement he might be required to act contrary to the duty he owed the company and other stockholders. *West* v. *Camden,* 135 U. S. 507 (10 Sup. Ct. 838, 34 L. Ed. 254).

"Each shareholder in the corporation has a right to rely upon the judgment of all the others in the election of directors and officers, and any such agreement which puts it out of its power to exercise such judgment is against public policy."

A leading case to like effect is that of *Guernsey* v. *Cook,* 120 Mass. 501. We have always adhered to this rule. For further cases see *Leland* v. *Ford,* 245 Mich. 599, and *Leland* v. *Ford,* 252 Mich. 547; *Stott* v. *Stott,* 258 Mich. 547. In the latter case, we stated:

"The stockholders of a corporation have a community of interest in the property owned by it. They can perform valid acts only when lawfully assembled in their representative capacity. When so acting,

every stockholder has the right to assume that every other stockholder is exercising an independent and honest judgment on the questions presented, and that none of them has been influenced by a consideration paid to him for voting in a particular manner. As was said in *West* v. *Camden,* 135 U. S. 507, 521 (10 Sup. Ct. 838, 34 L. Ed. 254), it was the right of the other stockholders 'to have the defendant's judgment, as an officer of the company, exercised with a sole regard to the interests of the company.' A number of stockholders, before a meeting, may agree to combine together to favor any particular policy or lawful action to be considered thereat, and, if they own a majority of the stock, the minority may not, ordinarily, question their right to do so.''

Plaintiff attempts to differentiate the instant case so as not to come under the general rule, but the same principle prevails in all of them. The contract providing that the parties manage and control a bank to the extent of their ability, and share equally in the salaries and compensation received by them, was more than a voting trust agreement. It was an illegal contract to manage and control banks not in the interest of the stockholders and the public but for the purpose of using the banks so as to make profits, draw and share salaries and compensation solely in the interest of the parties to the contract. It was against public policy and will not be enforced.

Plaintiff claims, however, that this was a joint enterprise. If it is one for the purpose of engaging in an illegal venture, the contract will not be enforced. Even assuming that the contract merely gave plaintiff or his decedent an option to purchase the stock, the option was never exercised. The contract called for personal services on the part of Mr. Brewer and death would terminate such contract. To the extent that it called for personal services under the joint venture, rights and liabilities of

the parties should be governed by the rules which govern partnerships, *Gleichman* v. *Famous Players-Lasky Corp.*, 241 Mich. 266. The death of a partner dissolves a partnership. *Murray* v. *Keeley Institute of Western Michigan*, 190 Mich. 295, 312. The joint venture had no assets. It covered an illegal agreement which will not be enforced by the courts.

The agreement between Brewer and Stoddard is attached to and made part of the bill of complaint. It thus appears on the face of the bill that it is based on an agreement that was contrary to public policy and unenforceable. Therefore the trial judge was justified in dismissing plaintiff's cause of action.

Order granting motion to dismiss is affirmed, with costs to defendant.

NORTH, C. J., and STARR, WIEST, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.