STEINBERG *v.* KOWAL.

Joint Adventures—Corporations—Apartment Houses—Evidence.
Evidence presented in suit by plaintiffs claiming deal for purchase of stock in corporations which owned 3 apartment houses was a joint enterprise *held,* to sustain trial court's finding as a fact that no joint enterprise had been established.

Appeal from Wayne; Brennan (John V.), J. Submitted October 4, 1955. (Docket No. 1, Calendar No. 46,532.) Decided March 1, 1956.

Bill by Meyer Steinberg and Samuel H. Rubin against Isadore Kowal and his wife, Minnie, Meyer Kowal and his wife, Sylvia, Gerald Kowal and his wife, Phyllis, C.M.F. Corporation and Georgian & Douglas Corporation, Michigan corporations, to establish rights in certain real estate and corporate stocks under an alleged joint venture, and to obtain appropriate equitable relief in respect thereto. Decree for defendants. Plaintiffs appeal. Affirmed.

*Stanley E. Beattie,* for plaintiffs.

*Clarence W. Videan* and *Moll, Desenberg, Purdy & Glover (Lester S. Moll,* of counsel), for defendants.

---

* Continued from Volume 344 Michigan.
References for Points in Headnotes
30 Am Jur, Joint Adventures § 62.
What amounts to joint adventure. 48 ALR 1055; 63 ALR 909; 138 ALR 968.

(1)

DETHMERS, C. J.  Complaining that the individual
defendants kept for themselves the assets of the
corporate defendants acquired by virtue of an al-
leged joint enterprise to which plaintiffs claimed that
they and the 3 male defendants were parties, plain-
tiffs prayed for an accounting, imposition of a con-
structive trust and other equitable relief.  They ap-
peal from decree dismissing their bill of complaint
with prejudice.

The trial court's statement of the claims of parties
we summarize as follows: Plaintiffs claim that plain-
tiff Steinberg, in reciprocation for a business favor,
had obtained from a brokerage firm confidential in-
formation that the stockholders of C.M.F. Corpora-
tion desired to dispose of its 3 apartment buildings
and stock interests, together with information as
to the corporation's financial status, and a "first call"
on the sale; that he evolved a plan for financing the
acquisition of the corporation or its assets by placing
mortgages on the apartments, liquidating the se-
curities in its portfolio and purchase of the corpora-
tion's stock through an escrow arrangement under
which money in its treasury could be used to apply
on the purchase price, leaving approximately $110,-
000 to be raised from other sources to complete the
deal; that he presented the information and plan
to his friend and attorney, plaintiff Rubin, and they
agreed to proceed therewith as joint adventurers;
that Rubin applied to a finance company for the
necessary loan, to be secured by mortgage on the
apartments, and obtained a commitment therefor
in favor of a new corporation to be formed; that
plaintiffs then met with members of the brokerage
firm, who also owned a large block of the C.M.F.
Corporation stock, and negotiated final details for
the acquisition of the corporate stock, including an
agreement that the corporation would liquidate all
the securities in its portfolio except shares in de-

fendant Georgian & Douglas Corporation (hereinafter called G. & D. Corporation), which owned 2 other apartment buildings which plaintiffs also desired to acquire; that it was agreed with the brokers that rentals of the apartments would be placed in escrow during pendency of negotiations and ultimately be applied, together with moneys in the corporate treasury, on the purchase price, and, further, that a controlling interest in G. & D. Corporation would also be obtained for plaintiffs through an option; that plaintiffs caused the transaction to progress to the stage of obtaining contractual commitments; that thereafter defendant Isadore Kowal (hereinafter called Kowal) invited himself into the deal and it was agreed that he and plaintiffs would proceed as joint adventurers, each to have an equal 1/3 interest; that later, out of concern for possible tax liabilities attending use of funds in the corporate treasury to purchase the stock, it was agreed that, instead, Kowal would furnish all the temporary financing necessary to close the deal and that, in consideration thereof, his interest was to be increased from 1/3 to 1/2, leaving plaintiffs each with a 1/4 interest but no obligation to furnish any of the financing; that after that a written offer and acceptance embodying the deal negotiated between plaintiffs and the brokers with respect to the C.M.F. stock, as above outlined, was signed by the brokers and by Rubin as attorney for a corporation to be formed, and an option was given to him in that same capacity for purchase of controlling interest in the G. & D. Corporation, it being intended that said new corporation would be formed to serve as an instrumentality of the joint enterprise between the parties; that thereafter Rubin gave the 3 male defendants a power of attorney to consummate the deal and, a few days later, an assignment of all his interest in the option and the purchase agreement with the brokers, but that he

did so solely for the purpose of enabling the Kowals to close the deal for the joint adventurers while plaintiffs were in Europe; that Kowal thereafter closed the deal under the purchase agreement, exercised the option and acquired a controlling interest in the 2 corporations for the joint adventurers but appropriated the same to the individual defendants, to the prejudice of plaintiffs' rights in the joint adventure.

The defendants claim that plaintiffs invited Kowal into a real-estate deal, on the basis of 50% to him and 50% to them, for the purchase of the 5 apartment buildings; that plaintiffs represented to him that the buildings could be had for a specified price, that Steinberg had the deal "tied up" and was the only man who could get the buildings and that plaintiffs had made a good-faith deposit thereon; that plaintiffs explained to him plans for obtaining a mortgage on the apartments and represented that the purchase could be accomplished by use of the mortgage funds together with an additional $150,-000 and that plaintiffs proposed that a new corporation be formed for that purpose into which plaintiffs would pay $75,000 and he the other $75,000; that shortly thereafter he discovered that plaintiffs did not have the deal "tied up," that others were also negotiating therefor and that he then told plaintiffs that he was going after the deal for himself, but was dissuaded therefrom by Rubin's assurance that the latter would have a signed agreement within a couple of days; that Kowal next learned that the apartment buildings were being valued at a price in excess of the figure represented to him by plaintiffs, that the buildings were not for sale as such, but that the only deal available was for the purchase of the stock of the corporations at a price requiring an investment considerably in excess of the amount represented to him by plaintiffs, that plaintiffs had

no arrangement with the brokerage firm, as they had represented to him, for purchase under an escrow arrangement permitting use of corporate treasury moneys to apply on the purchase price, and that plaintiffs had not made a good-faith deposit on the deal; that he then pointed out to Rubin that these facts were not in accord with representations made to him by plaintiffs and stated that, in consequence, he intended to make his own deal with the sellers; that Rubin blamed Steinberg for the misrepresentations and offered to proceed as Kowal's attorney to help him close the deal for himself; that in furtherance thereof Rubin and Kowal met with the sellers and sought a price reduction without avail; that Kowal then decided to accept the deal on the sellers' terms; that Rubin, acting as Kowal's attorney, thereupon signed the purchase agreement and took the option for Kowal, but, contrary to Kowal's desires, caused it to appear in the agreement and option that he was acting in behalf of a corporation to be formed, to which Kowal could not at that time object in the presence of the sellers because Rubin was acting as his attorney and had had the previous contact with the sellers which Kowal had not had; that to bind this deal Kowal was required to make a $50,000 deposit; that he offered to let Rubin in on the deal, if he would furnish half of the deposit, but that Rubin declined at that time to make any commitment in view of the increase in the price, but did agree to loan Kowal half the amount of the deposit for a few days, through an exchange of checks arrangement, to enable Kowal to make the deposit and that Rubin then said that he would consult Steinberg and, if plaintiffs were interested in being in on the deal at the increased price, they would advise Kowal accordingly and pay half the deposit; that Rubin did not succeed in contacting Steinberg and plaintiffs never agreed to nor did they ever

furnish half or any part of the deposit, but, on the contrary, Kowal repaid the loan from Rubin within a few days; that Kowal never agreed to furnish all the financing, temporary or otherwise, on behalf of a joint enterprise and that terms of a joint enterprise never were agreed upon between plaintiffs and him; that because the sellers would not consent to a provision in the purchase agreement as plaintiffs had originally represented that they would, for use of corporate treasury funds under an escrow arrangement to apply on the purchase price, it became necessary for Kowal to obtain about $150,000 to complete the deal; that at that time, because Rubin had improperly caused it to appear in the purchase agreement and option that they belonged to him in behalf of a corporation to be formed, when in truth he had obtained them in his capacity as attorney for Kowal and they actually belonged to the latter, Kowal insisted that Rubin give him a written assignment thereof, in order to make the written record of the deal conform with the facts, and that Rubin did so accordingly; that at that same time Kowal told Rubin that if at any time before the date for closing the deal Rubin and Steinberg would furnish 1/2 of the money, he would let them in on a 50–50 basis, and that Rubin promised to contact Steinberg in Europe for that purpose, but that at no time thereafter did they ever agree to nor did they furnish any part of the necessary funds; that, in consequence, no joint enterprise or other contractual relationship ever came into being between plaintiffs and defendants.

After hearing the testimony adduced in support of the claims of parties the trial court rejected those of plaintiffs and accepted as correct defendants' version of the facts, under which he held, as we agree, that a joint enterprise could not be said to have existed.

Plaintiffs urge their alleged contributions to the deal, claimed admissions by Kowal and asserted failure on his part to make any cash outlay for the deal, together with many other points in the evidence, as supporting their claims and refuting those of defendants. The defendants, in turn, answer them with respect thereto and raise other points in the record to refute plaintiffs' claims and support their own. No benefit would result to the public or to the profession from a discussion thereof, point by point, in this opinion. Suffice it to say that all have been fully considered. After careful examination of over 200 pages of briefs of parties and 1,178 pages of printed record, including the trial judge's 75-page opinion, we agree with him that the only issue presented is one of fact, whether the parties were engaged in a joint enterprise as plaintiffs claim, and we are not persuaded that, had we sat in his position, we would have disagreed, nor do we now, with his conclusion that plaintiffs failed to prove it.

Affirmed, with costs to defendants.

SHARPE, SMITH, REID, BOYLES, KELLY, and CARR, JJ., concurred.

BLACK, J., took no part in the decision of this case.