**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 8, 2003**

FIRST PUBLIC CORPORATION,
FIRST VENTURE CORPORATION,
and LOU BEER,

     Plaintiffs-Appellants,

v                                   No. 119204

WILLIAM U. PARFET, IRDC ACQUISITION
CORPORATION, J.W. HENRY WATSON,
CALEDONIA GROUP INC., MPI RESEARCH,
L.L.C., IRDC ACQUISITION COMPANY, L.L.C.,
and THOMAS J. HOOGEBOOM,

     Defendants-Appellees.

_____

PER CURIAM

     Plaintiffs seek leave to appeal a Court of Appeals judgment affirming the trial court's grant of defendants' motions for summary disposition. We affirm. However, because the Court of Appeals erred by recognizing an entirely new form of business entity not rooted in Michigan statutory or common law, we vacate in part its judgment.

I.  Background[1]

At the heart of plaintiffs' various claims alleging breaches of defendant's fiduciary duties is whether plaintiff First Public Corporation and defendant Caledonia Group, Inc., formed a lawful business relationship, and, if so, whether that relationship was terminated by plaintiff Lou Beer's memorandum of July 23, 1995.  Beer's memorandum, sent to defendant J.W. Henry Watson on behalf of plaintiffs, stated in pertinent part that "I cannot rely on you to represent my interests in good faith in any mutual transaction, and that henceforth our dealings should be at arms' length."

Defendants Watson and Caledonia moved for summary disposition under MCR 2.116(C)(8) and (10), primarily arguing that First Public had failed to sufficiently allege that a lawful business relationship had been formed.  The trial court concluded that First Public had alleged sufficiently either a partnership or a joint venture with Caledonia.  It also ruled that even if a joint venture or partnership had been formed, it ceased to exist as a result of Beer's July 23, 1995, memorandum to defendants.  The trial court granted partial summary disposition for Caledonia. Subsequently, the trial court granted summary disposition for all defendants.

---

[1] We have abbreviated the extensive factual and procedural history.  For a more detailed recitation, see 246 Mich App 182; 631 NW2d 785 (2001).

First Public then timely filed its appeal of right in the Court of Appeals, to which defendants filed a cross-appeal. The Court of Appeals thereafter affirmed the trial court's order of summary disposition for defendants,[2] in part using a different analysis than that employed by the trial court. The Court of Appeals proposed to recognize a new commercial business entity that it called a "joint enterprise."

The Court's analysis arose from its conclusion that the trial court made inconsistent rulings. The trial court initially found that plaintiffs had sufficiently pleaded the creation of a partnership or joint venture, but it later determined that the Beer memorandum had terminated the business entity, and the court appears to have thereafter assumed that plaintiffs never sufficiently pleaded the creation of a partnership or joint venture. The Court of Appeals presumed that the trial court had overlooked its initial ruling that the creation of a valid business entity had been sufficiently pleaded. The panel then concluded that First Public had *failed* to produce any jury-submissible evidence regarding either a partnership or a joint venture. That conclusion should have offered a sufficient basis to affirm the trial court.

The Court of Appeals, however, decided that *another* form

---

[2] The Court of Appeals released an unpublished opinion on March 16, 2001. The opinion was thereafter approved for publication, 246 Mich App 182.

of commercial business entity, a "joint enterprise," had been sufficiently alleged. The remainder of the Court of Appeals judgment then described this newly proposed business entity and explained why the Beer memorandum extinguished the "joint enterprise."

## II. Standard of Review

Whether Michigan law recognizes a "joint enterprise" as a commercial business entity is a question of law that is reviewed de novo. *Danse Corp v Madison Hts,* 466 Mich 175, 177-178; 644 NW2d 721 (2002). We also review de novo a trial court's decision to grant a motion for summary disposition. *Rose v Nat'l Auction Group, Inc,* 466 Mich 453, 461; 646 NW2d 455 (2002).

## III. Discussion

We reject the Court of Appeals panel's conclusion that plaintiff sufficiently alleged a "joint enterprise" because our law does not recognize a "joint enterprise" as a distinct commercial business relationship.

The Court of Appeals cited *Berger v Mead*, 127 Mich App 209, 215-216; 338 NW2d 919 (1983), for its conclusion that a "joint enterprise" is recognized in Michigan law. *Berger* defined a "joint enterprise" as "'an undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise.'" *Id.* at 216, quoting 48A CJS, Joint Ventures, § 3, p 395. However,

4

the Court of Appeals failed to distinguish the actual proposition in *Berger* from the present case. In *Berger*, a worker's compensation case, the court determined which of two municipalities employed the injured plaintiff for the purpose of ascertaining liability, where the two municipalities shared a police force. The Court in *Berger* concluded that the shared police force of the two municipalities could not be considered a "joint venture" because the profit motive necessary for a joint venture did not exist. *Berger, supra.* However, the *Berger* Court observed that "a number of jurisdictions have labelled *noncommercial* joint ventures as joint enterprises." *Id.* at 215 (emphasis added).

The alleged relationship in the present case was a *commercial* business relationship because it had a profit motive, unlike the arrangement in *Berger.* Accordingly, the citation of *Berger* as authority for recognizing a *commercial* business entity called a "joint enterprise" is misplaced.

In the commercial business law context, the term "joint enterprise" is loosely synonymous with the terms "joint venture" and "joint adventure," or generally describes a relationship that is either a "joint venture" or "partnership."[3] However, the parties have not identified, nor

---

[3] See, e.g., *Goodwin v SA Healy Co,* 383 Mich 300, 308–309; 174 NW2d 755 (1970) ("'It can be said that a joint adventure contemplates an enterprise jointly undertaken; that it is an association of such joint undertakers to carry out a single project for profit; that the profits are to be shared,

5

have we located, any Michigan case law that recognizes a "joint enterprise" that is distinct from a "joint venture" or "partnership" in the context of a legally recognized commercial business relationship.[4] As a result, Michigan case law does not provide any foundation for the Court's proposed recognition of a "joint enterprise" as a distinct commercial business entity.

More important, no statute has authorized the creation of

as well as the losses, though the liability of a joint adventurer for a proportionate part of the losses or expenditures of the *joint enterprise* may be affected by the terms of the contract.'") (emphasis added; citation omitted); *Van Stee v Ransford,* 346 Mich 116, 125-126; 77 NW2d 346 (1956) ("The name given the enterprise, whether that of partnership or joint adventure, is, with respect to the duty of the trust reposed, unimportant."); *Steinberg v Kowal,* 345 Mich 1; 74 NW2d 909 (1956); *Grabendike v Adix,* 335 Mich 128; 55 NW2d 761 (1952); *Kowal v Sang Corp,* 318 Mich 312; 28 NW2d 113 (1947); *Steketee v Steketee,* 317 Mich 100; 26 NW2d 724 (1947); *Brewer v Stoddard,* 309 Mich 119; 14 NW2d 804 (1944); *Hathaway v Porter Royalty Pool, Inc,* 296 Mich 90; 295 NW 571 (1941); *Danchoff v Sheahan,* 270 Mich 201; 258 NW 246 (1935); *Johnson v Ironside,* 253 Mich 428; 235 NW 209 (1931); *Gleichman v Famous Players-Lasky Corp,* 241 Mich 266; 217 NW 43 (1928); *Alderton v Williams,* 139 Mich 296; 102 NW 753 (1905); *Wyatt v Sweet,* 48 Mich 539; 12 NW 692 (1882); *Reed & Noyce, Inc v Municipal Contractors, Inc,* 106 Mich App 113; 308 NW2d 445 (1981); *Alpine Constr Co v Gilliland,* 23 Mich App 275; 178 NW2d 530 (1970).

[4] We note that in *Scarney v Clarke*, 282 Mich 56, 66; 275 NW 765 (1937), this Court stated that "[i]n our opinion the legal status of this association, being formed for business purposes is that of a joint enterprise." However, *Scarney* is more properly understood as referring to a "joint enterprise" generally as perhaps a joint venture or partnership. *Scarney* involved charitable trusts and has never been cited as authority for the recognition of a distinct legal commercial business entity termed a "joint enterprise," nor did it attempt to create or characterize such a distinct entity.

6

a commercial business entity termed a "joint enterprise." Indeed, the phrase "joint enterprise" appears in only one set of statutes in Michigan. Those statutes concern the lottery. See MCL 432.3(c); 432.9(3); 432.11(3); 432.12(3); 432.25(10); 432.30(2); 432.33(2); 432.41(1).

Despite the absence of any authority recognizing joint enterprises as commercial business entities, the Court, citing *Berger*, concluded that a "joint enterprise" was sufficiently alleged in the present case. The Court did not explain why recognition of a new type of commercial entity was warranted or why existing types of entities were inadequate. Further, the Court of Appeals failed to articulate the principles that define a "joint enterprise" or the characteristics that separate this new entity from a joint venture or partnership.

Because it presented no persuasive basis for extending the common law to recognize a distinct commercial business entity termed a "joint enterprise," we do not think it was wise for the Court of Appeals to propose to do so, and we decline to recognize such an entity at this time. Our conclusion is reinforced by the fact that the recognition and scope of duties in business relationships more appropriately falls within the general domain of the policy-making branches of our government. See, e.g., Uniform Partnership Act, MCL 449.1 *et seq*.

## IV. Conclusion

For these reasons, we vacate the "joint enterprise"

7

portion of the judgment of the Court of Appeals.  However, we do not disrupt the judgment of the Court of Appeals that the trial court properly ordered summary disposition for defendants on the ground that plaintiffs failed to produce any jury-submissible evidence regarding either a partnership or a joint venture.  Accordingly, we affirm.

Maura D. Corrigan<br>
Elizabeth A. Weaver<br>
Marilyn Kelly<br>
Clifford W. Taylor<br>
Robert P. Young, Jr.<br>
Stephen J. Markman

CAVANAGH, J.

I would not dispose of this case by opinion per curiam, but would grant leave to appeal.

Michael F. Cavanagh