# STATE OF MICHIGAN

# COURT OF APPEALS

---

BONY ROCHLANI a/k/a BONI ROCHLANI,

    Plaintiff-Appellant,

v

SANFORD AARON and ACUJUST, LLC,

    Defendants-Appellees.

UNPUBLISHED
September 4, 2018

No. 336651
Oakland Circuit Court
LC No. 2016-150924-CK

---

BONY ROCHLANI a/k/a BONI ROCHLANI,

    Plaintiff-Appellant,

v

SANFORD AARON and ACUJUST, LLC,

    Defendants-Appellees.

No. 336768
Oakland Circuit Court
LC No. 2016-150924-CK

---

BONY ROCHLANI a/k/a BONI ROCHLANI,

    Plaintiff-Appellant,

v

PIONEER STATE MUTUAL INSURANCE
COMPANY,

    Defendant-Appellee.

No. 336786
Oakland Circuit Court
LC No. 2016-150923-CK

---

Before: SERVITTO, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

-1-

In these consolidated matters, plaintiff appeals as of right trial court orders: (1) granting summary disposition in favor of defendants Sanford Aaron and Acujust, LLC on plaintiff's negligence and breach of fiduciary duty claims against them; (2) imposing sanctions against plaintiff and her counsel for violating MCR 2.114(D) and (E), and; (3) granting summary disposition in favor of defendant Pioneer State Mutual Insurance Company on plaintiff's claim that it breached their insurance contract. We affirm in all cases and remand to the trial court to award sanctions in favor of Sanford Aaron and Acujust, LLC for their actual damages and expenses, including reasonable attorney fees, incurred in having to respond to plaintiff's vexatious appeal pursuant to MCR 7.216(C) in Docket No. 336651.

Plaintiff owns a home in West Bloomfield, Michigan, and had a homeowner's insurance policy on the home through Pioneer State Mutual Insurance Company ("Pioneer"). On or about February 26, 2014, plaintiff claims that she incurred damages to the home and the personal property within due to the freezing and sudden bursting of water pipes in the home, and the entry of raccoons into the garage. On or about June 3, 2014, plaintiff hired defendants Sanford Aaron and Acujust, LLC to provide her with insurance adjusting services relating to a claim for the loss to be filed with Pioneer. Pioneer ultimately denied the claim. On January 7, 2016, plaintiff filed suit against Sanford Aaron and Acujust, LLC (collectively "Aaron") alleging breach of fiduciary duty, breach of contract, and negligence relating to their handling of her claim.

The trial court granted summary disposition in favor of Aaron and further found that plaintiff and her counsel violated MCR 2.114(D) and (E) by submitting verified pleadings which failed to attach or specifically identify the denial letter that Pioneer had sent, and which "otherwise lack arguable legal merit, are ungrounded in fact, and are unwarranted by existing law . . . ." The trial court thus sanctioned plaintiff and her counsel and awarded defendants reasonable expenses incurred from the filing of plaintiff's amended complaint, including reasonable attorney fees, reducing the sanctions to a judgment in Aaron's favor in the amount of $36,181.90.

On January 7, 2016, plaintiff filed a separate action against Pioneer alleging that it breached their insurance contract and seeking declaratory relief.[1] Pioneer moved for summary disposition, contending that there was no question that plaintiff intentionally concealed or misrepresented material facts relating to the claim, thereby voiding the policy, and that she also did not report the loss to Pioneer in a timely manner, thereby extinguishing any rights and obligations under the policy. The trial court agreed, entering summary disposition in favor of Pioneer.

---

[1] We note that in both actions, plaintiff and her counsel signed the complaints stating that there was "no other civil action arising out of the same transaction or occurrence as alleged" in each respective complaint—despite the fact that the complaints did, in fact, arise out of the same transaction or occurrence. This is in violation of MCR 2.113(C)(2).

These appeals followed.

<u>Docket No. 336651</u>

Plaintiff first contends that the trial court erred in granting summary disposition in favor of Aaron, as there was a genuine issue of material fact concerning the effects of Aaron's failures to provide sufficient proofs of loss to Pioneer. We disagree.

We review de novo a trial court's decision regarding a motion for summary disposition. *Bernardoni v City of Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2016). In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties in the light most favorable to the party opposing the motion. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Summary disposition under MCR 2.116(C)(10) is appropriate where the documentary evidence shows there is no genuine issue with respect to any material fact, and the moving party is entitled to judgment as a matter of law. *Id*.

To prevail on a claim for breach of contract, a plaintiff must establish by a preponderance of the evidence that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am, NA v First Am Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). Causation of damages is an essential element of any breach of contract action. *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). That is, the plaintiff must establish a causal link between the asserted breach of contract and the claimed damages. *Gorman v Am Honda Motor Co, Inc*, 302 Mich App 113, 118–19; 839 NW2d 223 (2013). "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601–02; 865 NW2d 915 (2014), quoting *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003).

To establish a prima facie case of negligence, a plaintiff must prove: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). "Whether a defendant owes a particular plaintiff a duty is a question of law that this Court reviews de novo." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013).

Proximate causation is a required element of a negligence claim. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "To establish proximate cause, the plaintiff must prove the existence of both cause in fact and legal cause." *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997). Cause in fact requires the plaintiff to "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 647-648 (quotation marks and citation omitted). "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable." *Id*. at 648 (quotation marks and citation omitted; alterations in original). Causation is an issue typically reserved for

-3-

the trier of fact unless there is no dispute of material fact. *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003).

A fiduciary relationship arises from the reposing of faith, confidence, and trust, along with the reliance of one upon the judgment and advice of another. *First Public Corp v Parfet*, 246 Mich App 182, 191; 631 NW2d 785 (2001), vacated in part on other grounds, 468 Mich 101; 658 NW2d 477 (2003). A fiduciary is under a duty to act for the benefit of the other person concerning matters within the scope of the relationship. *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 581; 603 NW2d 816 (1999). "Damages may be obtained for a breach of fiduciary duty when a position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *In re Duane v Baldwin Tr*, 274 Mich App 387, 401; 733 NW2d 419 (2007) (internal quotation marks and citation omitted). The existence of a legal duty is a question of law for the court. *Id.*

Plaintiff signed a contract with Aaron on June 3, 2014, wherein Aaron agreed to "assist in the preparation, presentation and adjusting of insurance claim," and plaintiff agreed to provide Aaron with "all relevant information regarding claim procedures, policy requirements . . . and any other information that may be needed to the claim." Plaintiff asserted that Aaron breached the contract with her by providing a sworn statement in proof of loss to Pioneer that was deficient. Plaintiff claims that Pioneer advised Aaron that the sworn statement was deficient and that the deficient sworn statement caused Pioneer to send plaintiff's claim for further investigation and schedule her for an examination under oath. Plaintiff further asserted that Aaron failed to timely provide Pioneer with repair estimates and timely schedule inspections of the property and that all of Aaron's failures amounted to a failure to properly and adequately prepare, present, and adjust plaintiff's claim, which ultimately caused Pioneer to deny her claim, caused her a diminution in the value of her home, the loss of personal property, and the costs of additional living expenses.

Assuming that all of the actions asserted by plaintiff in fact occurred and that Aaron's actions did constitute a breach of contract, breaches of fiduciary duties, and breach of duties in negligence, plaintiff did not establish that any of the breaches were the proximate cause of any damages suffered. Pioneer denied coverage for plaintiff's loss in a letter dated April 24, 2015. The letter stated:

> The documents submitted by you to Pioneer State Mutual Insurance Company purporting to be sworn statements in proof of losses and all other documents purporting to be sworn statements in proof of loss subsequent to the initial proof of loss, relating to the water and raccoon losses which occurred on or about February 26, 2014, at your home . . . cannot be accepted by the company as proofs of loss. Accordingly, those documents are hereby rejected and your claim, fully, finally and formally denied for the following reasons, among others:
>
> - You did engage in fraud and/or false swearing and/or misrepresentation with respect to the sworn statement in proof of loss submitted regarding your knowledge and notice of the claimed loss and the amount of the loss.
>
> - You did engage in fraud and/or false swearing and/or material misrepresentation with respect to your statements made at your

Examination Under Oath regarding the documentation submitted in furtherance of your claim including, but not limited to, your Proof of Loss and the amount of loss.

- You did, or someone by or at your direction intentionally caused this loss to occur.

- You failed to give prompt notice of loss to us and prejudiced our investigation and the evaluation of the circumstances around the loss including potential damages.

- You failed to cooperate in our investigation as it relates to making your son available to answer questions by PSMIC employees and/or representatives.

As a result of your actions as described above, your policy is void at the time you submitted the loss notice on May 20, 2014.

Aaron assisted plaintiff in preparing her sworn statement in proof of loss. Assuming that plaintiff is correct in her assertion that the sworn statement and its later corrected version were deficient, a deficient sworn statement in proof of loss was not a stated reason for Pioneer's denial of plaintiff's claim. While the denial letter did state the sworn statements in proof of loss "cannot be accepted by the company as proofs of loss" the letter *did not* state that the denial was based upon deficient or inaccurate proofs of loss. Instead, the letter went on to say that the sworn statements in proof of loss are rejected and plaintiff's claim "fully, finally and formally denied *for the following reasons, among others . . . ."* Only the listed reasons that follow that sentence are the reasons for Pioneer's denial of her claim—and none have to do with a deficient sworn statement in proof of loss. Thus, contrary to plaintiff's assertion, her claim was not denied due to persistent failures to provide sufficient proofs of loss to the insurer and the insurer did not cite this among the reasons for declining coverage. Moreover, none of the reasons cited for declining coverage can be attributed to Aaron.

The first reason stated for denying plaintiff's claim was that plaintiff engaged in fraud or false swearing with respect to the sworn statement as it concerned her knowledge and notice of the claimed loss and the amount of the loss. Aaron could only fill out the sworn statement as to plaintiff's knowledge and notice of the claimed loss based on the information that plaintiff provided. Aaron would have no independent way of determining when plaintiff knew of the claimed loss. And, plaintiff did not claim in her complaint that Aaron provided inaccurate information in the sworn statement; rather, she alleged that information was missing.

With respect to the amount of the loss, the initial sworn statement indicated that whole damage and loss was yet to be determined, with an explanation given that plaintiff would require services provided by various third parties to determine the costs and was waiting for the insurance carrier's decision before proceeding accordingly. Sanford Aaron testified at deposition that at the time he initially spoke to plaintiff about submitting her proof of loss, she had not had anyone at the home to assess the damage or give her an estimate as to repairs. He thus encouraged her to hire a remediation and restoration company to get this process started. In a

second sworn proof of loss, a figure for damages was supplied, which, according to Aaron, came from estimates for remediation and reconstruction that were prepared by a company called Emergency Restoration. Sanford Aaron testified that he is not an expert in water loss or damage, remediation, or reconstruction, and he relied on the figures provided by Emergency Restoration as accurate, just as he relied on plaintiff's representation as to when she discovered the damage and how it occurred as accurate. The stated reason for denial, then, cannot be attributed to Aaron.

As to the second reasons for denying plaintiff's claim, that she engaged in fraud or gave false statements at her examination under oath regarding the documentation submitted in furtherance of her claim, plaintiff testified at her deposition that Sanford Aaron was not with her at her examination under oath nor did he give any false statements for her.

Addressing the third reason for denying plaintiff's claim, that she or someone at her direction intentionally caused the loss to occur, there is no indication that Aaron knew that plaintiff did or would be accused of causing the loss to occur. Sanford Aaron was not accused of causing the loss to occur and did not know plaintiff before she hired him at the recommendation of a restoration company. And, Sanford Aaron testified that he had no reason to disbelieve plaintiff as to her explanation of how the loss occurred.

The fourth reason given for denying plaintiff's claim was that she failed to give prompt notice of the loss and prejudiced Pioneer's investigation and the evaluation of the circumstances around the loss. The loss occurred at some point in February 2014. Plaintiff testified that she did not advise Pioneer of the damage until May 2014. She further testified that she did not hire Aaron until June 2014 and admitted that if there was delay in reporting the loss to Pioneer, it was not Aaron's fault.

Finally, Pioneer denied plaintiff's claim because she "failed to cooperate in our investigation as it relates to making [her] son available to answer questions by PSMIC employees and/or representatives." Plaintiff hired an attorney for her examination under oath. Plaintiff testified that this attorney advised her that Pioneer also wanted to take her son Kris's examination under oath. According to plaintiff, Kris lives in Los Angeles and was unavailable. Plaintiff testified that she did nothing to make Kris available because the attorney told her she did not have to do so.

Because plaintiff cannot establish that Aaron caused the denial of her claim or any other damages, the trial court appropriately granted summary disposition in Aaron and Accujust's favor.

Plaintiff next claims that the trial court erred in concluding that her claims were devoid of arguable legal merit and in awarding attorney fees and costs to Aaron. We disagree.

"A trial court's finding that an action is frivolous is reviewed for clear error." *Kitchen v Kitchen*, 465 Mich 654, 661–62; 641 NW2d 245 (2002). We also review for clear error "the trial court's determination whether to impose sanctions under MCR 2.114." *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). "A decision is clearly erroneous where, although

there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen*, 465 Mich at 661-662.

A party pleading a frivolous claim is subject to paying the costs of the other party. MCR 2.114(F); MCR 2.625(A)(2); MCL 600.2591. These authorities not only authorize but require a court to sanction an attorney or party that files a frivolous action or defense. *Meisner Law Group PC v Weston Downs Condo Assn*, 321 Mich App 702; 909 NW2d 890 (2017). Imposing sanctions for asserting a frivolous action or defense is meant to deter parties and their attorneys from filing documents or asserting claims or defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose. *Id*. "A court must determine whether a claim or defense is frivolous on the basis of the circumstances at the time it was asserted." *Id*.

"Frivolous" means:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a)]

Sanctions shall also be imposed by the trial court if a document is signed in violation of MCR 2.114. Under MCR 2.114(D):

> The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a document is signed in violation of the above, the trial court "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees." MCR 2.114(E).

In her complaint, plaintiff asserted that the sworn statements on proof of loss submitted by Aaron on her behalf were deficient and that Pioneer denied her claim because "it determined that the sworn statements in proof of loss were fraudulent and misrepresented the amount of the

loss and for Aaron's other failures to timely provide Pioneer with information required under the Sworn proof of Loss such as specification of damage to the Property, an estimate of repairs or an inventory of Plaintiff's damaged personal property." However, prior to filing the complaint, both plaintiff and her attorney had received the denial letter from Pioneer explicitly stating the reasons for the denial of her claim. Plaintiff did not attach the denial letter to her complaint or even mention it. And, as previously detailed, none of the reasons set forth in the denial letter had anything to do with a "deficient" sworn statement in proof of loss. Instead, the denial letter details actions on plaintiff's part that caused Pioneer to deny her claim. Because plaintiff and her counsel had the denial letter in their possession before filing the complaint and, rather than acknowledging the stated reasons for Pioneer's denial of her claim, asserted the baseless and meritless argument that her damages were caused by actions of Aaron, the trial court did not err in finding that plaintiff's complaint was frivolous as defined in MCL 600.2591(3)(a), or devoid or arguable legal merit. Thus, the trial court did not err in sanctioning plaintiff and her counsel for filing sanctionable pleadings under MCR 2.114(E).

Plaintiff's assertion that Sanford Aaron is an attorney litigant and thus barred from recovering attorney fees is also devoid of legal merit. Plaintiff admittedly hired Sanford Aaron as a public insurance adjuster. Plaintiff admitted at her deposition that she did not hire him as an attorney, he provided no legal services to her, and that she did not sue him in his capacity as an attorney. Thus, Sanford Aaron is not an attorney litigant. That Sanford Aaron is also an attorney and employed a member of his law firm to defend him in this action does not preclude him from recovering attorney fees expended in defending himself against an action brought against him as a public adjuster.

We further find that the appeal in this matter was vexatious. Plaintiff and her counsel were aware at the time plaintiff filed her complaint that her claim with Pioneer had been denied for reasons unrelated to Aaron, yet plaintiff still undertook litigation. Throughout the litigation, it was revealed that plaintiff was untruthful about prior insurance claims for water damage and evasive about how and when the claimed damage occurred, remediation efforts, and repairs. There was no reasonable basis for a belief that there was a meritorious issue to be determined on appeal in this matter. Sanctions are thus awarded in favor of Sanford Aaron and Acujust in an amount equal to their actual damages and expenses incurred, including reasonable attorney fees, in having to respond to the vexatious appeal pursuant to MCR 7.216(C).

Docket No. 336768

Plaintiff challenges the amount of attorney fees awarded to Aaron as a sanction. "The amount of sanctions imposed by a trial court is reviewed for an abuse of discretion." *BJ's & Sons Const Co, Inc v Van Sickle*, 266 Mich App 400, 410; 700 NW2d 432 (2005).

MCR 2.114(E) provides, in relevant part:

**Sanctions for Violation.** If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the

-8-

reasonable expenses incurred because of the filing of the document, including reasonable attorney fees.

MCR 2.114(E) only requires the trial court to impose an appropriate sanction, which *may* include an order to pay reasonable attorney fees; therefore, the trial court has the discretion to tailor its sanction to the circumstances. *Kaeb v Kaeb*, 309 Mich App 556, 565; 873 NW2d 319 (2015). "The burden of proving the reasonableness of the requested fees rests with the party requesting them." *Vittiglio v Vittiglio*, 297 Mich App 391, 409; 824 NW2d 591 (2012), quoting *Smith v Khouri*, 481 Mich 519, 528–529; 751 NW2d 472 (2008).

Factors to be considered in determining the reasonableness of an attorney fee are set forth in MRPC 1.5 and include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Additional factors to be considered are: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred, and; (6) the nature and length of the professional relationship with the client." *Smith*, 481 Mich at 529, quoting *Wood v Detroit Automobile Inter–Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982).

In support of its motion to enter a judgment that included costs, including reasonable attorney fees, Aaron attached a verified bill of costs and the 2014 Economics of Law Practice Attorney Income and Billing Rate Summary Report. The trial court held an evidentiary hearing to determine the amount of sanctions to award Aaron and, after the hearing, issued an opinion and order setting forth a detailed analysis of all of the above factors, taking into consideration the evidence and exhibits presented by Aaron. While plaintiff challenges the $300 hourly rate charged by attorney David Warren (and accepted by the trial court), the rate falls within the range of billing rates of those in Warren's field of practice, and office location. Plaintiff also challenges the total amount of time claimed by counsel, but counsel testified at length concerning the time he spent on the case and the billings submitted. The explanations and time

billed were reasonable and sought in good faith, and the trial court did not abuse its discretion in awarding the amount of sanctions that it did.

Docket No. 336786

Plaintiff avers that the trial court erred in granting summary disposition in favor of Pioneer where she demonstrated that she substantially complied with the insurance contract and made no material misrepresentations. We disagree.

We review de novo a trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review de novo the construction of an insurance contract. *Sunshine Motors, Inc v New Hampshire Ins Co*, 209 Mich App 58, 59; 530 NW2d 120 (1995).

The homeowner's insurance policy that plaintiff held with Pioneer contained duties imposed on plaintiff after a loss, including the duties to give prompt notice of the loss to Pioneer, protect the property from further damage, make reasonable and necessary repairs to protect the property and keep an accurate record of repair expenses. The policy provides that no suit may be brought against Pioneer unless the plaintiff complies with policy provisions. The policy also contains provisions allowing it to void the policy under certain conditions. For example, the policy provides:

> The entire policy will be void if, whether before or after a loss, an insured has:
>
> a. intentionally concealed or misrepresented any material fact of circumstance;
>
> b. engaged in fraudulent conduct; or
>
> c. made false statements;
>
> relating to this insurance.

In interpreting insurance policies, we are guided by well-established principles of contract construction. *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 332; 632 NW2d 525 (2001). "The policy must be enforced in accordance with its terms; therefore, if the terms of the contract are clear, we cannot read ambiguities into the policy." *Id.*

On May 20, 2014, plaintiff reported a loss due to water damage and raccoons that had occurred sometime in February 2014. In support of its motion for summary disposition, defendant submitted a report dated August 19, 2014, detailing the results of an inspection conducted on plaintiff's home just two days after the reported loss. The report noted that, on first inspection, there were "many questionable issues" relative to plumbing repairs purportedly completed by a handyman, and there was no wet carpet or standing water anywhere but in the basement where water was still entering from an unknown source. The report noted possible coverage issues regarding the following: a lack of prompt notice of the loss, plaintiff's failure to prevent or minimize mold from developing or to mitigate mold once it was discovered,

-10-

plaintiff's failure to provide documentation or records concerning purported plumbing repairs, and a lack of evidence of frozen plumbing lines.

Defendant also provided plaintiff's examination under oath, during which plaintiff testified that she may have had one other insurance claim a long time back due to a tree falling. She testified that when she and her husband were in Chicago in February 2014, a friend of their son's had gone into the home to water the plants. He notified them that there was water leaking in the house. Plaintiff and her husband returned from Chicago a short time later to find ice in the garage and water in the kitchen, on the porch, in her son's bathroom, and in the basement. Plaintiff's husband went down to the basement and discovered the sump pump switch was not working. He changed the switch and water started draining from the basement. Plaintiff testified that she had never noticed any mold in the home. She further testified that she and her husband had a handyman named "Mike" come four or five times after the loss at issue and start performing some plumbing repairs. Plaintiff testified that there was a hole in her garage roof that was tarped off, perhaps sometime in the October or November of 2013, and that there was no prior water damage to the house.

At her deposition, however, plaintiff testified that her home had been damaged to her due to water when a pipe broke in the summer of 2008. When asked about a January 2009 claim relating to a sump pump failure and resulting water damage, plaintiff stated that she could not remember. Plaintiff testified that there was no water damage in the garage when she left for Chicago in February 2014, nor was there any water damage on the second or first floor of the home or in the basement. Yet, she also testified that there had been previous damage in her son's bathroom (located above the garage) due to a broken shower head—but that it had been repaired.

Pioneer also provided the deposition of Philip Gap, who was contacted by plaintiff's son and hired by plaintiff to perform a mold assessment on the home and write a protocol to remediate the mold. Gap inspected the home on June 24, 2016, and testified that water entered through the garage roof due to multiple impacts on the roof and affected a bathroom adjoining the garage. He further testified that a strong odor of mold emanated from the basement as soon as he opened the door and that the basement was extremely moldy. He testified that he was told that there had been a water leak from a refrigerator ice maker in the basement and his inspection led him to believe there had been water damage based on such an event.

Pioneer additionally provided the deposition testimony of John David, president of Emergency Restoration. He testified that he met with plaintiff and her son at their home but they were not forthcoming with information and he did not believe what they said was actually going on in the home, so he did not want the job. David testified that mold growing in the basement did not happen in just a few weeks, and the hole in the garage roof where they said raccoons came in was "just odd" to him and made him uncomfortable. David testified that because of this, he gave them a list of public insurance adjusters and left. According to David, the damage he saw in plaintiff's home was not consistent with damage caused by one frozen pipe event.

Finally, Pioneer provided documents showing that plaintiff had filed claims for water damage loss in 2008 and 2009 and that her policy was in danger of being cancelled in 2011 until she allowed Pioneer to inspect her home. A 2011 inspection showed soffit deterioration in a corner of the garage which created openings into the attic space. This unprotected attic space

was adjacent to the water pipes for the second and first floor bathrooms. Defendant also provided an April 17, 2015 report from WJE Architect and Engineer Specialists. The report noted that damage to the garage roof shingles was consistent with an abrupt exterior impact and that the damage was located directly beneath a large tree with overhanging limbs. The report also noted that a significant amount of work had been performed over the years on the basement sump pump and that the pump discharges water into a basement toilet (with evidence that it had been used in this fashion for a lengthy period of time). Mold was noted on a basement wall not connected with the walls near where the purportedly frozen and burst pipes were located, and the ceiling of the basement was noted to have no damage consistent with water coming from above. WJE opined that, based on evidence and inspection, if any water loss occurred, it was minor and localized to the three bathrooms, with no structural damages having resulted from the water loss. WJE further opined that although there is evidence of vermin in the garage attic space, there is no evidence that they caused any significant damage to the walls or ceiling that would make the pipes susceptible to freezing, and that the basement water damage is not related to any water coming from above but is instead due to bad grading and manipulations to the sump pump and pit over the years.

There is no dispute that plaintiff did not notify defendant of the alleged loss until three months after it occurred, did not submit a sworn statement in proof of loss until nearly six months after the loss, and plaintiff testified that she did not have an accurate record of repair expenses. In addition, documentary evidence established that if, in fact, a water loss occurred, plaintiff did not mitigate the loss. These actions could be construed as violations of plaintiff's duties under the policy.

More importantly, the policy clearly provides that the *entire policy* is void if plaintiff makes false statements with respect to the insurance. Though plaintiff testified that no prior water damage occurred in the home, and that she did not notice any mold in the home or any damage to the roof of the garage due to raccoons, the evidence clearly contradicts her testimony, as does her own later testimony. Plaintiff, therefore, made material false statements regarding prior water damage to her home and Pioneer was entitled to void her policy. Pioneer thus did not breach its contract with plaintiff when it denied her claims.

Affirmed in all cases and remanded to the trial court to award sanctions in favor of Sanford Aaron and Acujust, LLC for their actual damages and expenses incurred, including reasonable attorney fees, in having to respond to plaintiff's vexatious appeal pursuant to MCR 7.216(C) in Docket No. 336651. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens